**GOVERNMENT OF THE VIRGIN ISLANDS**

v.

**A., LEONARD, Appellant.**

**No. 90–3330.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Dec. 4, 1990.

Decided Jan. 11, 1991.

* Hon. Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation. Judge Re was limited to voting for panel rehearing.

H.A. Curt Otto, Burton & Otto, Christiansted, St. Croix, V.I., for appellant.

Terry M. Halpern, U.S. Atty., David M. Nissman, Chief Asst. U.S. Atty., David L. Atkinson, Office of the U.S. Atty., Christiansted, St. Croix, V.I., for appellee.

Before HIGGINBOTHAM, Chief Judge, and GREENBERG and COWEN, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Appellant Leonard A. appeals from a judgment of conviction and sentence entered on May 14, 1990, on a superseding information, sentencing him to concurrent custodial terms of seven years for convictions on two counts of aggravated rape and to additional custodial terms of seven years for convictions on two other counts of aggravated rape, concurrent with each other but consecutive to the first two terms. V.I.Code Ann. tit. 14, § 1700(a)(1) (Supp. 1989). Effectively, therefore, the sentence was for 14 years. The victims of the offenses, appellant's 13 and ten year old daughters, testified in support of the information and it is obvious that the jury accepted their testimony, for which we note there was corroboration.[1]

---

1. These ages are as of the trial. The crimes were committed several years earlier.

Appellant raises several issues which we will identify as we address them. Appellant filed a pretrial motion seeking "an order requiring the [daughters to] submit to a psychiatric examination to determine their respective competency to testify at trial." In his supporting affidavit he asserted that his older daughter was an habitual liar who sought to manipulate other persons and obtain sympathy for herself and he set forth specific incidents of her lying. He indicated that his younger daughter always imitated her older sister. He also supplied an affidavit of a woman, who described herself as his girlfriend, in which she asserted that the girls were liars. In a third affidavit, appellant's mother, the girls' grandmother, asserted that the older daughter "has lied to me" and that the younger one "strongly mimics and imitates" her sister.

On November 8, 1989, a magistrate entered an order denying the motion. In the order he recited that while there were affidavits setting forth that the older daughter lies and the younger one imitates her sister, there was "no contention by defendant that either minor suffers from mental illness or impairment other than the averments as to lying." He further pointed out that Fed.R.Evid. 601 "presumes competency to testify" and that the allegations in the affidavits "do not justify the requested intrusion" but that appellant "may through cross-examination and impeachment try the issue of credibility before a jury."

Appellant, while acknowledging that the magistrate had discretion in deciding the motion, *see Government of the Virgin Islands v. Scuito*, 623 F.2d 869, 875 (3d Cir. 1980), asserts that the order "involved no discretionary fact finding, it was basically a decision made as a matter of law." Brief at 12. Thus, he urges that we exercise plenary review and, on the merits, reverse.

We disagree with his approach. While the magistrate did not make findings of fact that does not mean that he did not exercise his discretion. Fact finding involves a determination of the accurate historical record. On the other hand the exercise of discretion concerns the determination of what should be done once the facts are ascertained. Here the magistrate accepted the facts proffered by appellant but concluded that they did not justify an order for the examinations. That determination was an exercise of discretion which we cannot disturb unless we find the discretion was abused, which we do not. *See United States v. Provenzano*, 688 F.2d 194, 203 (3d Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982).

 Certainly the general approach is not to allow the examinations appellant sought. As the Supreme Court of New Jersey has explained:

In order to satisfy the 'substantial need' criterion for a psychiatric examination, there must be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal. For example, in *Butler*, cited by the Appellate Division in this case, a psychiatric/psychological evaluation was ordered because there was evidence presented of the proposed witness's mental derangement, denominated as 'chronic brain syndrome associated with convulsive disorder, with behavior reaction,' as well as state psychiatric reports. *State v. Butler, supra*, 27 N.J. [560] at 572, 143 A.2d 530 [1958]. These proofs raised the requisite doubt as to the appropriate mental capacity of the proposed witness. In *State v. Franklin*, 49 N.J. 286, 229 A.2d 657 (1967), also cited by the Appellate Division, the court required that the principal state witness undergo a mental examination so that the defense could challenge her competency because the witness had once been committed to a mental institution and the lower court had earlier appointed a psychiatrist, reflecting previous doubt on the issue of competency. *Id.* at 288, 229 A.2d 657.

There is no reason to deviate from this general approach when the witness is youthful. Psychiatric testing on the issue of witness competency is an extraordinary measure. Trial courts, in the exercise of their discretion, should determine whether there is a 'substantial

need' for psychiatric testing in order to aid in the assessment of witness reliability. Consequently, there must be some persuasive evidential showing to establish such a need. Toward this end, the party requesting the testing must present evidence reasonably indicating something peculiar, unique, or abnormal about the young witness that would influence the witness's competence or the court's ability to assess that competence, or raise unusual difficulties in assessing the witness's credibility. The person's age as such is not 'peculiar,' 'unique,' or 'abnormal;' rather age is simply a dimension, a constituent aspect of human personality, and its bearing on individual conduct is part of our common experience. In light of our proscription of the use of age to disqualify a witness and our caution that psychiatric examinations be based on a substantial need, age *per se* cannot serve as a basis for ordering psychiatric testing for purposes of determining witness competency.

*State v. R.W.*, 104 N.J. 14, 22–23, 514 A.2d 1287, 1291 (1986).

■ There was nothing special in appellant's affidavits to justify the examination. His daughters were not of such tender years that their ability to perceive the events and recount them was doubtful. Furthermore, neither was shown to suffer from mental illness. While their veracity was challenged, that was not unusual as the integrity of any witness may be questioned. Thus, we conclude that the magistrate did not abuse his discretion in denying the motion for the psychiatric examinations.

■ Appellant next contends that the court erred in failing to exclude T.W. from the trial. This argument is unusual in that T.W. was, in appellant's term, "a critical non-witness." Brief at 19. The circumstances leading to this objection were that during the trial T.W. came into the courtroom and was identified by appellant's attorney as a daughter of a prosecution witness, P.W. The court indicated that:

**2.** Actually it is not even clear from the record that appellant asked for her to be excluded. He

Well, she may stay here, but she may not relate to anyone outside the courtroom what she observed and heard in here. And the witnesses may be cross examined as if—as to whether or not that occurred.

App. at 53.

■ In his brief appellant asserts that "the degree of prejudice to [him from T.W.'s presence at the trial] cannot be known." Brief at 20. He argues, however, that T.W. was his older daughter's best friend and that her presence probably prejudiced him.[2] There are strict limitations as to a court's power to exclude non-disruptive persons from either a criminal or civil trial. As then Chief Judge Seitz stated in *United States v. Cianfrani*, 573 F.2d 835 (3d Cir.1978):

'any claim of [a] practical justification for a departure from the constitutional requirement of a public trial must be tested by a standard of strict and inescapable necessity.' *Bennett v. Rundle*, 419 F.2d 599, 607 (3d Cir.1969) (in banc). This is necessary to insure that '[i]t is only under the most exceptional circumstances that [even] limited portions of a criminal trial may be even partially closed.' *Stamicarbon N.V. v. American Cyanamid Co.*, 506 F.2d 532, 542 (2d Cir. 1974).

Moreover, we hold that any order of exclusion must extend no farther than the circumstances strictly warrant in order to meet the asserted justification for closure. *United States v. Ruiz–Estrella*, 481 F.2d 723, 725 (2d Cir.1973). *Thus, only that portion of the public may be excluded for only that portion of the proceeding that the court finds to be strictly and inescapably necessary to protect the interests asserted by the defendant in support of his motion to close a hearing subject to the public trial requirement.*

. . . . .

*Not every interest asserted by a defendant ... will be sufficient to overcome*

certainly did not object to the court's decision on the matter.

*the strong presumption in favor of public proceedings.*

*Cianfrani,* 573 F.2d at 854 (emphasis added).[3]

Similarly, as we more recently held in *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984):

[t]he existence of a common law right of access to judicial proceedings and to inspect judicial records is beyond dispute. *United States v. Criden (Criden I),* 648 F.2d 814, 819 (3d Cir.1981). This common law right of access to judicial proceedings and records usually has been considered by the Supreme Court in connection with criminal trials and proceedings.

733 F.2d at 1066.

In effect, appellant asserts that he has the right to deny a citizen's access to a courtroom when that person is not a witness in the case. On the facts of this case, we conclude that there was no abuse of discretion by the trial court when it did not exclude T.W., as the older daughter's principal testimony related to private encounters with appellant. We cannot understand how anything that T.W. heard from other witnesses could have been significant with respect to that evidence. In any event the court permitted appellant to cross-examine the witnesses regarding what, if anything, T.W. told them and he does not claim to have taken that opportunity. Thus, he cannot point to any prejudice from T.W.'s presence in the courtroom and, accordingly, is entitled to no relief by reason of it.

■ The trial judge in this case was Judge Edward N. Cahn from the Eastern District of Pennsylvania and the sentencing judge was Judge Robert R. Merhige, Jr., from the Eastern District of Virginia. This change was attributable to the vacancies in both authorized district court positions in the District of the Virgin Islands, so that mainland judges have been temporarily assigned there, and the circumstance that Judge Cahn returned to the Eastern District prior to sentencing. Appellant moved for Judge Merhige to recuse himself asserting that he was entitled to be sentenced by Judge Cahn. Judge Merhige refused to do so and that refusal is a basis for appeal.

We do not doubt that it would have been preferable for Judge Cahn to have sentenced appellant. Certainly the situation in the District of the Virgin Islands is deplorable and thus by our opinion we are not suggesting that appellant has not raised a legitimate issue.[4] Nonetheless, Fed.R. Crim.P. 25(b) does provide that if by reason of "absence" the trial judge is unable to sentence a defendant another judge may do so. While it probably would have been physically possible for Judge Cahn to return to the Virgin Islands for the sentencing, it was not necessary for him to do so; if a judge is not considered absent when out of the district then the word "absence" in the rule has no meaning. We also point out that if in all cases we required trial judges to return to the Virgin Islands for sentencing, proceedings in their home districts might be disrupted.[5] Finally, we observe that Judge Merhige thoroughly familiarized himself with the case before he sentenced appellant.

■ Appellant's final argument relates to the sentence. On September 5, 1990, he made a motion for a reduction of sentence which Judge Merhige denied on September 11, 1990. Appellant urges that "the district court abused its discretion when it did not reduce [his] sentence so that all of the counts would be run concurrently." Brief at 22. There are two procedural problems with this contention. First, the issue is not

---

**3.** *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (seven justices concluding that the public has a constitutional right of access to trials); *cf. Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (holding that the public has no constitutional right to attend pre-trial proceedings).

**4.** Judge Merhige was the third district judge in this case, as Judge Raymond J. Broderick of the Eastern District of Pennsylvania was originally to sentence appellant. Judge Merhige came into the case when the sentencing was postponed.

**5.** We understand that as an administrative matter the visiting trial judges sitting in the trial of criminal cases do return to the Virgin Islands for sentencing, so that what happened here is unusual.

before us as the appeal was filed on May 14, 1990, from the judgment entered that day and thus was taken before the September 11, 1990, order was entered.[6] Second, the district court did not have jurisdiction to entertain the motion as it was filed while the appeal was pending. *See United States v. Batka*, 916 F.2d 118 (3d Cir.1990). Accordingly, we cannot grant relief to appellant by reason of the denial of the motion to reduce the sentence.

The judgment of conviction and sentence of May 14, 1990, will be affirmed.

---

**6.** We have not overlooked our in banc opinion in *United States v. Hashagen*, 816 F.2d 899 (3d Cir.1987). There the defendant filed a notice of appeal from an "Order denying post-trial motions, and the judgment of conviction upheld thereby" following the denial of his motion for a new trial. *Id.* at 901. The appeal was, however, filed two days before he was sentenced and three days before the judgment was entered and thus was premature under Fed.R.App.P. 4(b). We nevertheless held that we had jurisdiction. *Hashagen* is clearly distinguishable from this case for the appeal there related to proceedings before it was filed, and the subsequent sentencing and entry of the final judgment followed in the ordinary course of events. On the other hand insofar as this case concerns the denial of a reduction of sentence, appellant is attempting to appeal from a determination and order made almost four months after he filed the appeal. That issue could not possibly have been raised by the notice of appeal, especially in view of the circumstance that a motion for a reduction of sentence does not routinely follow sentencing. Therefore, unlike the premature notice of appeal in *Hashagen*, the notice here did not adequately advise the government of what was being appealed. *See* 816 F.2d at 906. In fact, appellant's notice of appeal recited that he appealed from "the final judgment entered in this action on the 8th day of May, 1990." Appellant was sentenced on May 8, 1990, but we are treating the notice of appeal as referring to the date of the entry of the judgment, May 14, 1990.