Ralph Mark JOSEPH, Appellant,

v.

GOVERNMENT OF THE VIRGIN
ISLANDS, Appellee.

No. CR.A.2000–44.

District Court, Virgin Islands,
Appellate Division,
D. St. Thomas and St. John.

Considered: Aug. 9, 2002.

Filed: Sept. 19, 2002.

Ruth Ann Magnuson, St. Thomas,
U.S.V.I., for Appellant.

Joel H. Feld, Assistant Attorney General, V.I. Department of Justice, St. Thomas, U.S.V.I., for Appellee.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and PATRICIA D. STEELE, Judge of the Territorial Court, Division of ST. CROIX, sitting by designation.

## MEMORANDUM OPINION

PER CURIAM.

Ralph Mark Joseph ["Joseph" or "appellant"] appeals his conviction for aggravated rape, unlawful sexual contact, and child abuse, arguing that (1) the trial judge abused his discretion in denying Joseph's pretrial motion to require the victim, S.J., to submit to a psychiatric evaluation; and (2) there was insufficient evidence for a finding of guilt. A review of the record and relevant caselaw indicates that Joseph failed to establish a "substantial need" warranting a court-ordered psychiatric evaluation of S.J. In addition, the trial transcript reveals that the trial judge's findings of guilt were sufficiently supported by the evidence. Accordingly, this Court will affirm Joseph's conviction.

## I. FACTUAL AND PROCEDURAL HISTORY

In an Amended Information, the Government of the Virgin Islands ["government" or "appellee"] charged Joseph with sexually and physically abusing his daughter, S.J.[1] (See App. Ex. 8.) Joseph was charged with: (1) three counts of aggravated rape of a minor under the age of thirteen, in violation of v.I. CODE ANN. tit. 14, § 1700(a)(1); (2) five counts of unlawful sexual contact, in violation of 14 V.I.C. § 1708(2); (3) one count of child abuse, in violation of 14 V.I.C. § 505; and (4) one count of aggravated assault and battery, in violation of 14 V.I.C. § 298(5). (See id.) Joseph pled not guilty to the charges, and waived his right to a jury trial.

### A. Joseph's Pretrial Motion to have Witness S.J. Examined by a Psychiatrist or Psychologist

Joseph filed a pretrial motion seeking to have his daughter, S.J., examined by a psychologist or psychiatrist. (See id. Ex. 3.) The government opposed the motion, arguing that the appellant had failed to show any compelling reason for such an examination of the minor victim. In response to the government's objection, Joseph put forth the following reasons[2] for subjecting S.J. to a psychiatric evaluation:

1. The alleged [victim has] also alleged [she was] sexually abused by a person in Dominica, [West Indies].

2. The alleged [victim has] been interviewed by the police, Health and Human services workers and two physicians thus far, and will be interviewed by counsel for Defendant, together with [her] guardian ad litem, and in the presence of the Assistant Attorney General on this case, as well as possibly others.

(Id. Ex. 6 at 2 (Mem. in Supp. of Reply to Opp'n to Mot. for Psych. Exam.).)

The trial judge denied Joseph's motion, and noted that "there are countervailing

---

1. The government originally also charged Joseph with sexually and physically abusing his other daughter, A.J. The trial ultimately proceeded solely on the charges concerning the alleged acts against S.J., as A.J. had relocated to St. Maarten and did not appear for the trial. (See Trial Tr. at 3–6.) These charges, therefore, concern S.J. only.

2. Joseph actually moved to have both of his daughters, S.J. and A.J., examined by a mental healthcare professional. Although Joseph put forth different reasons for examining the two girls, these reasons pertain to S.J. only.

considerations weighing heavily against ordering a psychiatric examination of a complainant," such as the "trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination; the examination itself could serve as a tool of harassment; and the impact of all these considerations may well deter the victim of such a crime from lodging any [complaint] at all." In addition, the judge noted that, under Federal Rule of Evidence 412(a), "evidence concerning the past sexual behavior or sexual disposition of an alleged victim [of a sexual crime] must be excluded, with certain limited exceptions." The trial judge then concluded that, to permit Joseph to inquire into instances of past sexual abuse suffered by the victim and possibly introduce this evidence at his trial would be in violation of "the spirit of Rule 412." (*Id.* Ex. 7 at 1–2 (Order, Crim. No. F516/1998 (Terr.Ct. March 9, 1999)).)

Joseph renewed his Motion for Leave to have Witnesses Examined by Psychologist or Psychiatrist. The appellant asserted that the trial judge misunderstood his intentions in seeking to have the girls examined by a psychiatric professional. (*Id.* Ex. 10.) Joseph maintained that he intended to "utilize the examinations of the [witnesses] to determine their respective credibility, ability to express themselves, and the like regarding their allegations against [him]." (*Id.* Ex. 11 at 1–2 (Mem. in Supp. of Renew. of Mot. for Leave to have Witnesses Exam. by Psychologist or Psychiatrist).) Joseph averred that, although the witnesses' sexual behavior was irrelevant, "[i]ncidents which may have occurred to them, however, are fair grounds for examination, both on the witness stand and in the psychologist's/psychiatrist's office." (*Id.* at 2.) The government reiterated its opposition to the motion. (*Id.* Ex. 12.) The trial judge then denied the motion for reconsideration. (*Id.* Ex. 13.)

## B. Joseph's Criminal Trial

On September 7, 1999, this matter proceeded to a bench trial. At trial, S.J., who was then thirteen, testified that, from the age of six to ten, she resided in Dominica. S.J. stated that, during her stay in Dominica, she was raped more than once by a man. (*See* Trial Tr. at 17–19.) In late 1996, she relocated to St. Thomas to live with her father, Joseph. (*Id.* at 19.) S.J. testified that, during the following year, in 1997, her father began sexually abusing her. She stated that Joseph touched her breasts and "[rubbed] his hand around" them and that he "suck[ed] them" with his mouth. S.J. testified that her father touched her breasts more than ten times. (*Id.* at 24–25.)

S.J. also testified that her father "put his finger in [her] vagina" and that he "[c]onstantly" touched her vagina with his hands. The minor explained that:

> "[w]hile I was taking a shower he [Joseph] came in, shift [sic] the shower curtain and then he told me come closer to him. And I went. He put his finger in my vagina and he moved it around."

(*Id.* at 25–26.) In addition, S.J. testified that her father had sexual intercourse with her in "the living room, the kitchen, [and] the bathroom." S.J. testified that Joseph had intercourse with her more than ten times, and that her father stopped having sex with her when he was arrested on November 23, 1998. She said that, during intercourse, her father "mov[ed] on top of [her] rapidly," and that afterwards, "white and sticky" things came from her vagina. (*Id.* at 31–32.) She also stated that after her father had sexual intercourse with her, her vagina and stomach hurt. (*Id.* at 35.) S.J. testified that, during the two months before his arrest, her father had sexual intercourse with her "two to three times." (*Id.* at 28–30.) S.J. also testified that Jo-

seph made her "[s]uck his penis" and that, when she did this, a "[w]hite salty liquid" came out of his penis. (*Id.* at 33–34.)

On November 21, 1998, two days before her father's arrest, Joseph beat S.J. with a plastic hanger because she had not cleaned the house as he asked her to. S.J. described that he hit her on her head, back shoulder, and feet, and that, as a result of the beating, she bled on her arms and feet. (*Id.* at 39–46.)

Arlene Smith Lockridge, M.D. ["Dr. Lockridge"], a pediatrician at Roy Lester Schneider Hospital with experience in handling child sexual abuse cases, testified that, upon examining S.J., she found that the minor had bruises on her legs and a tenderness on the top of her head. (*Id.* at 115–17.) Dr. Lockridge also concluded that S.J. "had a flap of hymenal tissue which represented healed pieces of hymenal tissues from lacerations" and that, when she attempted to conduct an examination of S.J.'s internal organs, she found a significant amount of tenderness in the area of S.J.'s ovaries. (*Id.* at 117–18.) Dr. Lockridge concluded that S.J.'s physical symptoms strongly suggested the occurrence of chronic sexual abuse, and that S.J. "has incurred multiple incidences of vaginal penetration." (*Id.* at 118–22.) Dr. Lockridge further concluded that S.J. had been subject to sexual abuse relatively recently to the time of her examination, thus consistent with S.J.'s allegations concerning her father. (*Id.* at 124–28.)

Dr. Lockridge also found that the bruising on S.J.'s leg "had loop marks that reflected the shape that would be consistent with the shape of the top portion of the hanger." (*Id.* at 133–34.) S.J.'s brother, Jason Joseph, testified that their father sometimes hit S.J. with a hanger (*id.* at 250), and Joseph himself admitted to beating S.J. with a hanger because she did not

clean the house as he had instructed her to. (*id.* at 341–45, 359).

The Territorial Court Judge convicted Joseph of (1) three counts of aggravated rape in violation of 14 V.I.C. § 1700(a)(1); (2) one count of unlawful sexual contact in violation of 14 V.I.C. § 1708(2); and (3) one count of child abuse in violation of 14 V.I.C. § 505. (App. Ex. 14 (Judgment, Crim. No. F516/1998 (Terr.Ct. October 29, 1999)).) In reaching his conclusions, the trial judge noted that he found S.J.'s "demeanor, listening ability [and] her response to the whole proceeding to be outstanding" and that she was "a credible witness." In addition, the judge found that "her testimony was logical, rational and consistent." (*Id.* at 420 (Findings of Fact and Concl. of Law).)

The trial judge found that the medical evidence corroborated S.J.'s testimony that her father raped her just before his arrest. (*Id.* at 421–22.) He also found her "vivid testimony about the taste of the ejaculation" convincing. The trial judge, therefore, concluded that the government had established that Joseph had (1) perpetrated an act of sexual intercourse with a person not his spouse who was under thirteen years of age by putting his penis in her vagina; (2) committed an act of sexual intercourse with a person not his spouse who was under thirteen years of age by putting his finger in S.J.'s vagina; (3) committed an act of sodomy with a person not his spouse under thirteen years of age by forcing S.J. to perform an act of fellatio; (4) engaged in sexual conduct with a person not his spouse who was under thirteen years of age by touching her breast with his hands; and (5) did knowingly and recklessly cause a child to suffer physical injuries by beating her on her head and on her body with a plastic hanger in violation of 14 V.I.C. section 505.[3] (*Id.* at 423–24.)

**3.** Although the trial transcript indicates that  the judge stated that Joseph had violated

Joseph was subsequently sentenced to fifteen years imprisonment.[4] He timely appeals his conviction.

## II.  DISCUSSION

### A.  Jurisdiction

This Court has jurisdiction to consider the judgments and orders of the Territorial Court in criminal cases.  4 V.I.C. § 33; Section 23A of the Revised Organic Act of 1954.[5]

### B.  Whether the Trial Judge Abused his Discretion in Denying Joseph's Motion for Leave to have S.J. Examined by a Psychologist or Psychiatrist

■ On appeal, Joseph contends that the trial judge abused his discretion in denying his motion to subject S.J. to a psychiatric examination.  He avers that S.J. "had been subjected to a difficult life" before she moved to St. Thomas to live with him, and that certain events in S.J.'s childhood, such as the death of her mother and having been molested while in Dominica, constituted unusual circumstances that may have affected her credibility.  Joseph maintains, thus, that S.J. should have been examined by a mental health expert, and insists that, because S.J. has already been interviewed by "the police, Health and Human services workers, two physicians, counsel for the Defendant, [her] guardian *ad litem* as well as the Assistant Attorney General," submitting her to the requested

psychological examination would "surely not add to any indignity that S.J. has been subjected to."  The government maintains that the trial judge properly weighed the appellant's interests against S.J.'s privacy interests, and acted within his discretion in denying the motion.

■ This Court reviews a trial judge's denial of a motion seeking a psychiatric examination of a witness for abuse of discretion.  *See Government of the Virgin Islands v. Scuito*, 623 F.2d 869, 875 (3d Cir.1980) (citing *United States v. Benn*, 476 F.2d 1127, 1131 (D.C.Cir.1972)).  "Psychiatric testing on the issue of witness competency is an extraordinary measure." *See Government of the Virgin Islands v. A., Leonard*, 922 F.2d 1141, 1143 (3d Cir. 1991) (quoting *State v. R.W.*, 104 N.J. 14, 514 A.2d 1287, 1291 (1986)).  In general, courts do not permit such examinations. *See id.*

In *Scuito*, the defendant faced charges of forcible rape under 14 V.I.C. section 1701(3).  *See* 623 F.2d at 870 n. 1.  Before trial, the defendant moved for a court order requiring the alleged victim to undergo a psychiatric examination.  *Id.* at 871.  In support of the motion, the defendant's attorney submitted an affidavit in which he attested that the complainant, *inter alia*, (1) often appeared to be "in a spaced out or trancelike state;" (2) had been seen in public in "see-through top garments which seem indicative of socially aberrant behav-

"section 505 of title 16" (*see* Trial Tr. at 424), it is clear that he intended to find the appellant guilty of child abuse under section 505 of title *14*.

**4.** The trial judge imposed Joseph's sentence accordingly: (1) fifteen years for each of three counts of aggravated rape in violation of 14 V.I.C. § 1700(a)(1); (2) five years imprisonment for one count of unlawful sexual contact in violation of 14 V.I.C. § 1708(2); and (3) ten years imprisonment for one count of child abuse in violation of 14 V.I.C. § 505.  The

judge ordered that all sentences run concurrently.  (*See* App. Ex. 14 (Judgment, Crim. No. F516/1998 (Terr.Ct. October 29, 1999)).)

**5.** *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. CODE ANN 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN tit. 1).

ior;" (3) testified that she did not report the crime until the following day, and (4) admitted an "interest and devotion to a certain book ... which contains passages of religious-like worship of LSD and other mind-altering drugs." *Id.* at 874. The defendant's attorney asserted that these observations were "highly indicative of a personality which fantasizes to extremes and which indulges in and seeks altered states of consciousness." *Id.* The trial judge denied the motion, concluding that to require a psychiatric examination would "violate the spirit of [Federal Rule of Evidence] 412.[6]" *Id.*

On appeal, the defendant argued that, by relying on Rule 412, the trial judge either abused his discretion or failed to exercise properly his discretion. *Id.* at 874. The Court of Appeals for the Third Circuit reasoned that "if the judge abused his discretion to the prejudice of defendant, a new trial should be ordered; if he failed to exercise his discretion out of a mistaken belief that Rule 412 controlled the issue, we should remand so that he may consider the matter anew." *Id.* The Court of Appeals noted that a trial judge's discretion to order such an examination is not unbounded, and countervailing considerations weigh heavily against granting such a request, such as that

> a psychiatric examination may seriously impinge on a witness' right to privacy; the trauma that attends the role of complainant to sex offense charges is sharply increased by the indignity of a psychiatric examination; the examination itself

could serve as a tool of harassment; and the impact of all these considerations may well deter the victim of such a crime from lodging any complaint at all. *Id.* at 875 (quoting *Benn*, 476 F.2d at 1131).

The Court observed that Rule 412 addresses evidence of a rape victim's prior sexual conduct, and that the defendant's motion did not seek to introduce such evidence, but instead sought "an expert opinion regarding the complainant's general ability to perceive reality and separate fact from fantasy." *Id.* at 875. The Third Circuit, however, held that the district court judge's ruling was not based on the letter but on the "spirit" of Rule 412. The principal purpose of that rule is, as its legislative history demonstrates, quite similar to the countervailing considerations quoted above: "to protect rape victims from the degrading and embarrassing disclosure of intimate details about their private lives." *Id.* at 875–76 (internal footnotes omitted). The Third Circuit held that the court appropriately exercised its discretion, and affirmed the decision.

In *A., Leonard*, the defendant was convicted of raping his two minor daughters, in violation of 14 V.I.C. section 1700(a)(1). *See* 922 F.2d at 1142. On appeal, the defendant challenged the trial judge's denial of his motion seeking psychiatric evaluations of the alleged victims to "determine their respective competency to testify at trial." *Id.* at 1143. In support of his motion, the defendant, in an affidavit, had

---

6. Territorial Court Rule 7 provides that the practice and procedure in the Territorial Court of the Virgin Islands shall be governed by the Rules of the Territorial Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence. There is no local rule that is inconsistent with Federal Rule of Evidence 412(a), which, except under limited circumstances, forbids the admission of evidence of an alleged victim's "sexual behavior" or "sexual predisposition" in all "criminal proceedings involving alleged sexual misconduct." As the Third Circuit summarized in *Scuito*, Rule 412's purpose "is to prevent the victim, rather than the defendant, from being put on trial." 623 F.2d at 876 n. 19 (quoting 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 412(01), at 412–9 (1979)).

asserted that his older daughter was "an habitual liar" and that his younger daughter "strongly mimic[ed] and imitat[ed]" her older sister. *Id.* In support of his claim, the defendant submitted two additional affidavits in which individuals, including the girls' mother, attested that the older girl lied and that the younger daughter often imitated her sister. *Id.* The trial judge denied the motion, finding that the defendant had failed to contend that "either minor suffers from mental illness or impairment other than the averments as to lying." *Id.*

The Third Circuit, in affirming the trial judge's denial of the motion, adopted the two-prong standard applied by the Supreme Court of New Jersey in *State v. R.W.*, 514 A.2d at 1291, holding that a party seeking a court order requiring a witness to undergo psychiatric testing must show that a "substantial need" for such testing exists "in order to aid in the assessment of witness reliability." To satisfy the first prong of the "substantial need" test

> there must be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal.

*Id.* at 1143. In addition to this requirement, a party seeking a psychiatric evaluation must also

> present evidence reasonably indicating something peculiar, unique, or abnormal about the young witness *that would influence the witness's competence or the court's ability to assess that competence, or raise unusual difficulties in assessing the witness's credibility.*

*Id.* at 1144 (emphasis added). The Third Circuit held that because the defendant's daughters (1) "were not of such tender years that their ability to perceive the events and recount them was doubtful"

and (2) did not suffer from mental illness, the defendant had failed to demonstrate a justification for the examination. *Id.* Moreover, the Court noted that, "[w]hile [the witnesses's] veracity was challenged, that was not unusual as the integrity of any witness may be questioned." *Id.*

Here, Joseph moved to have his daughter, S.J, examined by a psychiatrist or psychologist, because (1) she previously had been sexually abused by a man in Dominica and (2) such an examination would be harmless to S.J., because she had already been interviewed by the police, Health and Human Services workers, Joseph's attorney, among others. This hardly constitutes a "substantial need" to subject S.J. to a psychiatric evaluation. S.J. was thirteen when she testified at her father's trial and, like the victims in *A. Leonard,* capable of adequately perceiving and recounting events. Under the test adopted by *A., Leonard,* Joseph was required to establish that S.J. suffered from some type of "an identifiable or clinical psychiatric or similar disorder." *Id.* at 1143. S.J.'s earlier sexual abuse does not constitute such a psychiatric or psychological condition. Moreover, the trial judge denied Joseph's motion, indicating that he considered the countervailing considerations weighing heavily against such an examination as well as Federal Rule of Evidence 412(a). Based on these considerations, the trial judge appropriately concluded that to permit Joseph to inquire into instances of past sexual abuse suffered by S.J. and possibly introduce this evidence at his trial would be in violation of the "spirit" of Rule 412, as S.J.'s life, and not the appellant's actions, would have been on trial. In light of *Scuito* and *A. Leonard,* therefore, the trial judge acted within his discretion in denying Joseph's request for an intrusive psychiatric evaluation of S.J.

Joseph urges this Court, as he urged the trial judge, to adopt the standard set forth by the Supreme Court of Nevada in *Griego v. State*, 111 Nev. 444, 893 P.2d 995 (1995). In *Griego*, the Court held that

> it would be error for a trial judge to preclude a defendant from having an alleged child-victim examined by an expert in psychiatry or psychology if (1) the State has employed such an expert; (2) the victim is not shown by compelling reasons to be in need of protection; (3) evidence of the crime has little or no corroboration beyond the testimony of the victim; and (4) there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity.

*Id.* at 999 (quoting *Keeney v. State*, 109 Nev. 220, 850 P.2d 311, 315 (1993)). Joseph avers that, even though the government did not employ a psychologist or psychiatrist, the testimony of Dr. Lockridge "had the same effect." Dr. Lockridge, however, is not a licensed psychiatrist or psychologist. At trial, she testified solely as to S.J.'s physical condition, concluding that it was consistent with that of a young girl who had been chronically sexually abused. Dr. Lockridge did not testify as to S.J.'s mental or emotional state. Even if this Court were to adopt the *Griego* holding, therefore, Joseph failed to meet this first criterion. *See Chapman v. State*, 117 Nev. 1, 16 P.3d 432 (2001) (upholding trial judge's denial of defendant's motion to subject victim to psychiatric evaluation because clinical forensic interviewer who interviewed the victim concerning the incidents of sexual abuse did not qualify as an expert); *Koerschner v. State*, 116 Nev. 1111, 13 P.3d 451 (2000) (affirming conviction where the govern-

ment "elicited no psychological evidence during its presentation to the jury" and there was no "indication that the State had some advantage over the defense by having access to psychological evidence"). Accordingly, we will affirm the trial judge's denial of Joseph's request to subject S.J. to a psychiatric exam.

## C. Whether the Evidence was Sufficient for a Finding of Guilt

■ Joseph challenges his conviction, asserting that the record does not support a guilty verdict. He contends that the evidence presented at his trial did not establish that there was either an act of sexual intercourse (14 V.I.C. § 1700(a)(1)) or sexual contact (14 V.I.C. § 1708(2)). Joseph also challenges his conviction under 14 V.I.C. § 505 (child abuse), arguing that the government failed to establish that he knowingly or recklessly caused a child to suffer physical harm.[7] The government asserts that the evidence presented at trial sufficiently supports the trial judge's guilty verdict.

■ In reviewing the sufficiency of the evidence to support a conviction, a trial court's judgment will be sustained if, viewing the evidence in the light most favorable to the government, a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt of every element of the offense. *See Georges v. Government of the Virgin Islands*, 119 F.Supp.2d 514, 523 (D.V.I.App.Div.2000), *aff'd*, 265 F.3d 1055 (3d Cir.2001). The trial judge found Joseph guilty of (1) three counts of aggravated rape in violation of 14 V.I.C. § 1700(a)(1); (2) one count of unlawful sexual contact in violation of 14 V.I.C. § 1708(2); and (3) one count of child abuse

7. In addition, Joseph argues that Dr. Lockridge's testimony concerning S.J.'s recounting of her sexual abuse constitutes hearsay. Because the trial judge's findings of guilt are sufficiently supported by S.J.'s testimony and Dr. Lockridge's medical testimony, we do not consider this claim.

in violation of 14 V.I.C. § 505. Giving the government the benefit of all reasonable inferences to be made therefrom, the evidence was more than sufficient for a reasonable fact-finder to find Joseph guilty beyond a reasonable doubt.

To establish aggravated rape under 14 V.I.C. § 1700(a)(1), the government was required to show that Joseph "perpetrated an act of sexual intercourse or sodomy with a person not [his] spouse ... who is under thirteen years of age." Under the Virgin Islands Code

"sexual intercourse" means vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examination.

"sodomy" means carnal knowledge of any person by the mouth, i.e., cunnilingus or fellation; or by the anus; or by submission to the same; or by any insertion, however slight, or any object into a person's anus, excluding such insertion for medical treatment or examination.

14 V.I.C. § 1699(d), (e). The offense of unlawful sexual contact in the first degree, under 14 V.I.C. § 1708(2), is defined as "[a] person who engages in sexual contact with a person not the perpetrator's spouse ... when the other person is under thirteen years of age." "Sexual contact" is defined as

the intentional touching of a person's intimate parts, whether directly or through clothing, to arouse or to gratify the sexual desires of any person. The term "intimate parts" means the primary genital area, groin, inner thighs, buttocks, or breasts of a person.

14 V.I.C. § 1699(c). Finally, in this jurisdiction 14 V.I.C. § 505 describes the crime of child abuse:

Any person who abuses a child, or who knowingly or recklessly causes a child to suffer physical, mental or emotional injury, or who knowingly or recklessly causes a child to be places in a situation where it is reasonably foreseeable that a child may suffer physical, mental or emotional injury or be deprived of any of the basic necessities of life ....

S.J. testified that her father repeatedly touched her breasts, her vagina, and had sexual intercourse with her. She explicitly described how her father had approached her while she was in the shower and inserted his finger in her vagina. S.J. also testified, with graphic detail for a child of her age, about being forced to perform fellatio on her father. In addition, S.J. recounted having been beaten, to the point where she bled, by her father. S.J.'s testimony alone was sufficient to have convinced a fact-finder to convict the appellant of these charges. See Lewis v. Government of the Virgin Islands, 77 F.Supp.2d 681, 684 (D.V.I.App.Div.1999), aff'd, 215 F.3d 1314 (3d Cir.2000). In this case, S.J.'s testimony was supported by the testimony of Dr. Lockridge, who verified that S.J. had been the victim of a sexual assault shortly before the November 23, 1998 arrest of the appellant, and that her physical condition was consistent with that of a young girl subjected to chronic sexual abuse. With respect to the child abuse conviction, Joseph himself admitted to having beaten S.J. with a plastic hanger on the day in question. "[O]nly when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may an appellate court overturn the verdict." United States v. Anderson, 108 F.3d 478, 481 (3d Cir.1997) (quoting United States v. McNeill, 887 F.2d 448, 450 (3d Cir.1989)). Accordingly, we find that the trial judge's findings of guilt are sufficiently supported by the evidence.

## III. CONCLUSION

Because Joseph failed to offer a "substantial need" warranting the court-ordered psychiatric examination of his daughter, S.J., we find that the trial judge did not abuse his discretion in denying Joseph's motion for such. Furthermore, the record indicates that the trial judge's findings of guilt are sufficiently supported by the evidence. Accordingly, we will affirm Joseph's conviction.

### ORDER

For the reasons given in the accompanying memorandum of even date, it is hereby

**ORDERED** that Ralph Mark Joseph's conviction of (1) three counts of aggravated rape in violation of v.I. CODE ANN. tit 14, § 1700(a)(1); (2) one count of unlawful sexual contact in violation of 14 V.I.C. § 1708(2); and (3) one count of child abuse in violation of 14 V.I.C. § 505 is **AFFIRMED**.