**FELIX JOSEPH, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**
JOSEPH v. GOVERNMENT OF THE VIRGIN ISLANDS
Crim. App. No. 2002-127

District Court of the Virgin Islands

Division of St. Thomas

May 26, 2005

613

*For appellant*: DAVID J. COMEAUX, ESQ., ELIZABETH A. KLIESCH, ESQ., St. Thomas, V.I.

*For appellee*: MAUREEN PHELAN, A.A.G., St. Thomas, V.I.

FINCH, *Chief Judge of the District Court of the Virgin Islands*; MOORE, *Judge of the District Court of the Virgin Islands*; and DONOHUE, *Judge of the Territorial Court, Division of St. Croix, sitting by designation.*[1]

## MEMORANDUM

(May 26, 2005)

Felix Joseph was convicted in Territorial Court of unlawful sexual contact with a minor in violation of 14 V.I.C. § 1708(2). He presents myriad issues for review. Because the trial court judge abused his discretion in denying Joseph's motion for leave to have the victim examined by a psychologist, we will reverse the conviction and remand to the Territorial Court for further proceedings consistent with this opinion.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case arises out of the conviction of Felix Joseph of unlawful sexual contact with a minor. The act happened in February 2002, while M.E., the minor victim, was sleeping at the house of Joseph, a friend of her father's, in the same bed with Mr. Joseph's ten-year old daughter. At the time of the incident, M.E. resided with her father, his girlfriend, Debra Nibbs, and Nibbs' children.

On a Friday night, Joseph told the two girls spooky stories, then asked his daughter if she wanted him to sleep with them because they were scared. She answered yes. (App. at 352.) Joseph turned off the lights and lay down on the floor. A little later, he slipped into the bed beside the

---

[1]    Judge Moore retired on January 3, 2005.

victim. (App. at 354). As she was falling asleep on her back, she testified that he put his hand into her panties and put his finger inside her vagina and moved it from left to right. (App. at 354-355.) She then rolled over to face the other girl, who was asleep. She testified that Joseph then took his hand out of her parities and she fell asleep. When she awoke on Saturday morning, her panties were on the bed beside her. She did not remember taking them off. (App. at 357-358.) The other girl's version of events is different. She testified that she did not remember her father getting into the bed or even coming into the room, but admitted she fell asleep at some point that night. (App. at 433-436, 446.)

M.E. tried to tell her father's girlfriend, Debra Nibbs, about the incident on Sunday night, but Nibbs told her that she was too busy to talk to her. On Monday night, M.E. finally told Nibbs what had happened. Nibbs said she would take care of it and left a note at Joseph's house. Nibbs and M.E. eventually told M.E.'s father what happened. He was angry, however, neither adult reported Joseph to authorities. (App. at 368-369) As it turned out, M.E.'s father had sexually abused her since she was five years old and Nibbs knew about the abuse and had done nothing. (App. at 369, 397, 402.)

In April 2002, M.E. told a family friend, Jasmine James, that her father was molesting her and James reported the abuse to the authorities. (App. at 396, 400-401.) On April 30, 2002, the child was taken to the emergency room. When asked by the doctor whether anyone besides her father had touched her inappropriately, she named Joseph. (App. at 304.) The police interviewed M.E. the next day. When the officer asked if anyone else had ever touched her sexually, M.E. again named Joseph.

## II. JURISDICTION

This Court has jurisdiction to consider the judgments and orders of the Territorial Court in criminal cases that result from a conviction. 4 V.I.C. § 33; Section 23A of the Revised Organic Act of 1954.[2]

---

[2] *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2001), reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2001) (preceding V.I. CODE ANN. tit. 1).

## III. ANALYSIS

Appellant presents many issues for review. We will discuss each individually.

### A. The Trial Judge Abused his Discretion by Denying Joseph's Motion for Leave to Have the Victim Examined by a Psychologist or Psychiatrist.

This Court reviews a trial judge's denial of a motion seeking a psychiatric examination of a witness for abuse of discretion. *See Gov't of the Virgin Islands v. Scuito*, 623 F.2d 869, 875 (3d Cir. 1980). "Psychiatric testing on the issue of witness competency is an extraordinary measure." *Joseph v. Gov't of the Virgin Islands*, 226 F. Supp. 2d 726 (D.V.I. App. Div. 2002) citing *Gov't of the Virgin Islands v. Leonard*, 922 F.2d 1141, 1143 (3d Cir. 1991).

The Third Circuit Court of Appeals has adopted a two-prong standard for determining whether a witness should undergo psychiatric examination. *Leonard*, 922 F.2d at 1143. A party seeking a court order requiring a witness to undergo psychiatric testing must show that a "substantial need" for such testing exists "in order to aid in the assessment of witness reliability." *Joseph*, 226 F. Supp. 2d at 732.

> To satisfy the first prong of the "substantial need" test there must be a showing of some deviation from acceptable norms, such as an identifiable or clinical psychiatric or similar disorder, beyond the realm of those human conditions that ordinary experience would confirm as normal ... In addition to this requirement, a party seeking a psychiatric evaluation must also present evidence reasonably indicating something peculiar, unique, or abnormal about the young witness *that would influence the witness's competence or the court's ability to assess that competence, or raise unusual difficulties in assessing the witness's credibility.*

*Id.* (emphasis in original).

With respect to the "substantial need" prong of the test, the defense produced information that showed that M.E. deviated from "acceptable norms." The appellant produced a report from a previously-conducted psychological exam by Dr. Rita Dudley Grant which indicated that M.E. exhibited deliberate "manipulative behavior" (App. at 752-53) and was "extremely emotionally needy and highly attention seeking."

(*Id.* at 753.) Another professional who treated M. E. also indicated in a written report produced by the appellant that she is a young woman of above average intelligence who "uses manipulation at will." (App. at 803.) The previously conducted psychological reports that M.E. suffered from psychological problems that affected her ability to tell the truth due to years of sexual abuse by her father was information that met the "substantial need" prong of the test: thus, we hold that the trial judge abused his discretion by refusing to order the witness to undergo a psychiatric evaluation.[3]

## B. The Court's Exclusion of Evidence of Previousily-Conducted, Available Psychological Evaluations by M. E.'s Doctors was not Error.

At the trial, the appellant attempted to have Dr. Grant's report admitted as a "business record" of the Family Resource Center, laying the foundation through the testimony of Sandra Hodge, a therapist of the Family Resource Center. The report, however, was not generated by the Family Resource Center. Dr. Grant is not, and has never been, a member of the Family Resource Center. Hodge testified that although she read the report, she did not use it to counsel the victim. (App. at 467.) The trial judge refused to enter into evidence the report of Dr. Grant because it was not a business record of the Family Resource Center.

Under Federal Rule of Evidence 803(6), a business record can only be admitted if it is "kept in the course of a regularly conduct business activity, and if it was the regular practice of that business activity to make the memorandum ... all as shown by the testimony of the custodian or other qualified witness." The trial judge's refusal to admit the document was correct. Hodge was not a proper witness to authenticate the document because she was not the custodian of the document. Appellant had planned to call Dr. Grant but the subpoenas were issued for the wrong day. (App. at 463-465.) When appellant realized the error, counsel did not move for a continuance. (App. at 464.) Possession by one doctor of medical records from a second doctor does not incorporate the document into the first doctor's business records. *See Belber v. Lipson,*

---

[3] In denying appellant's motion for an independent evaluation of M.E., the court's only findings were that "I've issued an order denying that motion." (App. at 107.) It would have been extremely helpful for this court to have had a better articulation on the record of the reasons the trial court denied this motion.

905 F.2d 549, 552 (1st Cir. 1990). The trial court was correct in excluding Dr. Grant's report.

Appellant also argues that the trial court improperly excluded a report of Vivian Cubano de Crites. The appellant never offered this document into evidence during the trial, however. Moreover, Joseph's subpoena for Vivian Cubano de Crites was never served. (App. at 477-478.) Again, when counsel discovered the witness had not been served, he did not request a continuance. (App. at 478, 492.) Appellant argues that: the court should have continued the trial sua sponte. To preserve this issue for appeal, appellant had to move for a continuance in the trial court. Having failed to do so, the appellant cannot raise the issue for the first time here.

## C. Hearsay Issues

The trial court's ruling on the admissibility of testimony is reviewed for abuse of discretion, except that this Court's review is plenary to the extent the ruling interprets a federal rule of evidence. *See Gov't of the Virgin Islands v. Morris,* 191 F.R.D. 82, 85 (D.V.I. App. Div. 1999). Appellant raises several issues concerning statements which were improperly admitted into evidence. We will discuss each hearsay issue individually.

### 1. Testimony of the emergency room physicians

■ Appellant argues that the trial court erroneously allowed testimony of Dr. Ruvivar, the emergency room doctor who examined M.E. While giving her medical history, the child told the emergency room physician that she had been assaulted by her father and by Joseph. (App. at 303.) Any error that occurred by admitting this statement was harmless error. An error is harmless if it is highly probable that the error did not contribute to the judgment. In particular, improper admission of cumulative evidence is generally considered harmless error. *United States v. Mitchell,* 365 F.3d 215, 253 (3d Cir 2004). Almost every witness testified that the child accused Joseph of molesting her two days after the event. The jury also heard that she told her father's girlfriend, her father, her mother, an adult named Shelia, Jasmine James, the police, and Sandra Hodge that Joseph molested her. (App. at 316, 367, 368, 396, 412, 460.) The doctor's testimony, therefore, was cumulative evidence and any error in admitting it was harmless.

618

## 2. Written report of Dr. Ruvivar

In addition to Dr. Ruvivar's testimony, the court admitted his written emergency-room report into evidence as a business record (App. at 617.) Like his testimony, any possible error that occurred was cumulative and thus harmless error.

## 3. Expert status of Dr. Ruvivar

Joseph argues that Dr. Ruvivar gave an impermissible opinion when he stated "I believe her." (App. at 309). This error, however, was invited by the appellant. On cross examination, the appellant had a difficult time getting the doctor to agree that there was no medical evidence that Joseph touched the child. The counsel asked, "The mere fact that she said something is enough as far as you are concerned?" The doctor replied, "I believe her." The doctor answered the question asked. Given the doctor's testimony to that point, Joseph could not possibly have expected any other answer, including "no." Appellant did not object to the answer or move to strike the answer at the time the doctor made this statement.

The appellant cannot complain of error he injected into the case. *United States v. Fioravanti*, 412 F.2d 407, 414 (3d Cir. 1969) (where injection of inadmissible evidence is attributable to action of defense, introduction does not constitute reversible error); *see also United States v. Velasquez*, 304 F.3d 237, 240 (3d Cir. 2002) (where defendant did not move to strike non-responsive answer on cross-examination, and d[id] not request a curative instruction, there was no plain error).

## D. The Court's Failure to Strike Two Prospective Jurors was not Error.

Appellant argues that the court erred in refusing to excuse two jurors for cause. He asserts that he was forced to exercise his two peremptory strikes to remove two jurors because the court failed to excuse these jurors. If the court had properly removed these jurors for cause, appellant claims he would have used peremptory challenges on other jurors, which would have moved a juror from being an alternate to one of the twelve jurors who decided the case. Appellant provided a written statement from a person who sat through the trial as an alternate in which she swore she would have voted to acquit Joseph.

Unfortunately for appellant, the Supreme Court has ruled that if a trial judge errs in refusing to strike a juror for cause, the appellant can

only preserve the error by leaving the offending juror on the jury and appealing the ruling if convicted. *United States v. Martinez-Salazar*, 528 U.S. 304 (2000). In effect, the appellant cured any error himself by exercising the peremptory challenges. He was thus convicted by a jury with no biased juror and deprived of no right to an unbiased jury. By removing the jurors, the appellant did not lose a peremptory challenge. "Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury." *Martinez-Salazar*, 528 U.S. at 315-317. Therefore, no reversible error occurred.

### E. The Government Proved Every Element of its Case.

Appellant argues that the government failed to prove its case because the only eyewitness was the victim and her testimony was inconsistent. An appellant challenging the sufficiency of the evidence must prove that, even when the evidence is viewed in the light most favorable to the verdict, and even when the government is given the benefit of all inferences, no rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *Jackson v. Byrd*, 105 F.3d 145, 147 (3d Cir. 1997); *Gov't of the Virgin Islands v. Morris*, 191 F.R.D. 82, 85 (D.V.I. App. Div. 1999). The appellant who challenges the sufficiency of the evidence bears a heavy-burden. *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994).

██ Appellant argues that the government failed to prove the fourth element of the crime, i.e., that the sexual contact was performed for the purpose of the appellant's own or another person's sexual gratification. 14 V.I.C. § 1699. The specific intent to arouse or gratify the sexual desire of a person can be inferred from conduct, remarks, or from all the surrounding circumstances. "Intent is a question of fact which may be inferred from the conduct of the parties under the circumstances; it can rarely be proven through direct evidence." *Motta v. Government of the Virgin Islands*, 2004 U.S. Dist. LEXIS 25112 (D.V.I. App. Div. November 30, 2004). In the present case, the victim testified that as she was falling asleep, the appellant placed his hand inside her underwear. He placed his finger inside the "thing" that she uses to "pee." The child could not remember the name for this body part, but effectively identified it as inside her vagina. He then moved his finger left and right. In the context of the rest of the evidence at trial, this was not a parent or a

doctor touching the child in a non-sexual manner. Rather, Joseph was a family friend who had no innocent, non-sexual reason to move his finger to stimulate the child's vaginal area. His actions are more than sufficient to sustain a guilty verdict.

## F. The Government did not Inappropriately Refer to Appellant's Decision not to Testify.

■ Appellant also raises the issue of the government inappropriately referring to Joseph's decision not to testify. The statement in question occurred during closing arguments where the prosecutor stated, "There were only two eyewitnesses—basically the eyewitnesses are [M.E.], the victim, and the Defendant, Felix Joseph. Those are the two people that know what actually happened." (App. at 517). Nothing in this statement specifically referred to the appellant's failure to testify and thus this argument is rejected.

## G. Proper Jury Instructions were Given.

Finally, the appellant raises the issue of whether the jury instructions contained error. This argument is likewise without merit. The first instruction to which appellant objects to is the element that encompasses 14 V.I.C. § 708, that the touching involved in violating the statute must be with the specific intent to arouse or gratify sexual desire while instructing the jury on this element, the court stated:

> To prove the Defendant guilty of unlawful sexual contact in the first degree, the government must prove beyond a reasonable doubt each of the following elements. First, that the defendant, Felix Joseph, intentionally engaged in sexual contact with [the victim] by touching her vagina.

> Second, that [the victim] was not his spouse. Third, that [the victim] was under 13 years of age and, fourth, that such act was committed to arouse or gratify the sexual desires of the defendant or another person.

(App. Vol. II, 595-596.) The appellant argues that this jury instruction was reversible error because it did not contain a precise specific intent instruction.

■ To commit this crime, the Virgin Islands Code requires that the defendant commit the act with the specific intent "to arouse or gratify the

621

sexual desires of any person." 14 V.I.C. § 1699; 14 V.I.C. § 1708(2). The trial court clearly instructed the jury that an essential element to convict the defendant was whether the "act was committed to arouse or gratify the sexual desires of the defendant or another person." Thus, although the words "specific intent" were not given, the jurors were still required to find that the appellant acted with the appropriate specific intent. The instruction, as given, was adequate.

█ Appellant also argues that the trial court erred by refusing to give a special jury instruction regarding the credibility of the child victim. The judge correctly instructed the jury about the appropriate weight of each witness's testimony. The trial court judge has the discretion to determine whether the jury should be specially instructed regarding the credibility of a child witness and, if so, the nature of that instruction. *Guam v. McGravey*, 14 F.3d 1344, 1348 (9th Cir. 1995). The judge did not abuse his discretion in refusing to give the appellant's proffered instruction.

## IV. CONCLUSION

We hold that the trial court abused its discretion in denying Joseph's motion for leave to have the victim examined by an independent psychologist. Accordingly, we will reverse Joseph's conviction and remand to the trial court for proceedings consistent with this opinion.