**KENDALL WILLIAMS, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Civil App. No. 2005-61
District Court of the Virgin Islands
St. Thomas and St. John Division
June 26, 2009

Leonard B. Francis, Esq., St. Thomas, USVI, *For the appellant.*

DOLACE MCLEAN, AAG, St. Thomas, USVI, *For the appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and FRANCIS J. D'ERAMO, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

### (June 26, 2009)

Following a jury trial conducted in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court")[1] Kendall Williams was convicted of first-degree murder, unauthorized carrying of a firearm during the commission of first-degree murder, first-degree assault, unauthorized carrying of a firearm during the commission of first-degree assault, and unauthorized possession of ammunition. Kendall Williams now appeals his conviction. For the reasons given below, the Court will affirm the conviction.

## I. FACTS

On October 24, 2002, Kendall Williams' house was burglarized. On October 27, 2002, Khoy Smith borrowed his girlfriend's car and drove to a basketball court in the area known as Tutu on St. Thomas, U.S. Virgin Islands. There, Khoy Smith met his friend, Raymond Smith, Jr. ("Raymond Smith"). The two men began smoking marijuana in front of a building in a residential neighborhood known as Turnkey, Tutu High Rise. After about twenty minutes, a turquoise-green car approached. Kendall Williams was driving the vehicle and Gregory Williams[2] was the only passenger. Gregory Williams exited the passenger side of the car with a gun in hand and told Khoy Smith and Raymond Smith not to move. Khoy Smith began running away. Gregory Williams chased Khoy Smith,

---

[1] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. See Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

[2] Gregory Williams was tried with Kendall Williams and found guilty of the same offenses.

and subsequently shot and killed him. Gregory Williams then ran back to the car and got in. Kendall Williams and Gregory Williams drove off.

In February, 2004, the government filed a third amended information (the "Information") against Kendall Williams in the Superior Court. The Information charged Kendall Williams with first-degree murder, unauthorized carrying of a firearm during the commission of first-degree murder, first-degree assault, unauthorized carrying of a firearm during the commission of first-degree assault, and unauthorized possession of ammunition.

The trial in this matter commenced on January 31, 2005. The government called Raymond Smith, who testified that, on October 27, 2002, he saw Gregory Williams exit the car with a gun in his hand and run after Khoy Smith. Shortly thereafter, Raymond Smith heard a gunshot. The next day, Khoy Smith was found dead in nearby bushes. The government also called Ismael Sasso ("Sasso") as a witness. Sasso testified that he was in the vicinity of the shooting at the time it occurred. Sasso identified Williams as the driver of the car and said that he saw Gregory running toward the car with a gun in hand shortly after hearing a gunshot. Sasso also testified that he was testifying pursuant to a deal with the government. Additionally, the government called Makeda Petersen ("Petersen"), who testified that she was also in the vicinity of the shooting at the time it occurred. Petersen testified that she saw Kendall Williams arrive in a green car. Petersen further stated that she saw another man, whom she did not identify, exit the car with a gun in hand. Petersen further explained that she saw that man chase Khoy Smith, and shortly thereafter she heard a gunshot. Finally, the government called Detective Mario Stout, of the Virgin Islands Police Department. Detective Stout testified that, during his investigation of this case, several individuals had expressed fear of the defendants. Detective Stout also stated that Sasso was lying when Sasso said he had a deal with the government.

During the government's case, Kendall Williams moved for a mistrial. The court denied his request.

Kendall Williams called Kim Emmanuel ("Emmanuel") as a defense witness at trial. Emmanuel testified that he was employed at West Indian Creations, a jewelry retail, customizing, and repair shop in St. Thomas. Emmanuel stated that, on October 27, 2007, Kendall Williams was present with him at the West Indian Creations store in downtown Charlotte Amalie, St. Thomas from approximately 9:00 a.m. until just

before 5:00 p.m. that evening. During direct examination, Emmanuel testified that he suspected there was an implied connection between the October 24, 2002, burglary of Kendall Williams' house and the October 27, 2002, shooting of Khoy Smith. Kendall Williams also called Chevroy Bishop ("Bishop"), who had spent time in prison with Sasso. Bishop stated that, while in prison, Sasso told him about his deal with the government to testify in consideration for dismissal of his grand larceny charges.

The jury found Kendall Williams guilty of all five counts alleged against him in the Information. He was later sentenced to life imprisonment without parole for the murder conviction, fifteen years in prison for the assault and firearms convictions, and seven years for the ammunition conviction.

Kendal Williams timely appealed his conviction, raising the following issues. First, whether the conduct of the trial judge deprived him of his due process right to a fair trial, and whether the court erred in denying his motion for a mistrial based such conduct. Second, whether the conduct of the prosecutor deprived him of such due process rights. Third, whether the Superior Court committed reversible error by admitting into evidence the testimony of government witnesses stating concerning fear and intimidation of testifying, and Detective Stout's testimony concerning witness fear and intimidation, or by precluding the defense attorney from directly questioning Emmanuel regarding any connection between the burglary and the shooting. Fourth, whether the Superior Court erred in preventing the defense attorney. Fifth, whether he was denied effective assistance of counsel when his trial counsel failed to object to the prosecutor's misconduct during his opening statement or his summation.

## II. JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).

"We review *de novo* questions of law, issues implicating rights protected under the U[nited] S[tates] Constitution, and the interpretation of statute[s]. However, we afford the more deferential clear error review to [the trial court's] factual determinations." *Garcia v. Gov't of the V.I.,*

48 V.I. 530, 534 (D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert*, 42 V.I. 184, 89 F. Supp. 2d 658, 663 (D.V.I. App. Div. 2001)); *see also Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984). The sufficiency of the evidence supporting an appellant's conviction is a legal question subject to plenary review. *See United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998); *Castillo v. Gov't of the V.I.*, 48 V.I. 519, 523 (D.V.I. App. Div. 2006). We also review *de novo* whether a prosecutor's conduct was improper. *See Turbe v. Gov't of the V.I.*, 49 V.I. 730, 737 (D.V.I. App. Div. 2008) (citing *United States v. Nelson Rodriguez*, 319 F.3d 12, 38 (1st Cir. 2003)). The trial court's ultimate decision to deny a mistrial for abuse of discretion. *United States v. West Indies Transport, Inc.*, 37 V.I. 579, 127 F.3d 299, 311 (3d Cir. 1997).

Reversal may be avoided if trial errors are found to be harmless. See FED. R. CRIM. P. 52(a) (2002)[3]; *Davis v. Gov't of the V.I.*, 48 V.I. 860, 871-73 (D.V.I. App. Div. 2007). "Under this standard, the reviewing court must satisfy itself that there is no reasonable possibility that the error, viewed in the context of all the evidence presented, contributed to the guilty verdict, undermining confidence in the trial." *Davis*, 48 V.I. at 871-72.

Where trial counsel fails to object to an error, we reverse only if the asserted violation amounts to "plain error." *See* FED. R. CRIM. P. 52(b) (2002)[4]; *United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005). "Where a defendant demonstrates error that is plain, and that affects substantial rights, we may correct that error where the fairness, integrity, or public reputation of judicial proceedings was affected." *Davis*, 407 F.3d at 164 (quotations and citations omitted). In order to effect substantial rights, an error must have been prejudicial, and must have "affected the outcome of

---

[3] Federal Rule of Criminal Procedure 52(a) ("Rule 52(a)") provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a) (2002).

 Rule 52(a) is made directly applicable to the Superior Court by Superior Court Rule 7. *See* SUPER. CT. R. 7 (1994) ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Federal Rules of . . . Criminal Procedure . . . .").

[4] Pursuant to Federal Rule of Criminal Procedure 52(b), "plain error, that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b) (2002).

the [trial] court proceedings." *United States v. Olano,* 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

## III. ANALYSIS

### A. Page Limit

As a preliminary matter, the Court should note that the appellant's brief is ninety-six pages long, exclusive of the tables of contents and table of authorities.

■ Pursuant to Virgin Islands Rule of Appellate Procedure 22 ("Rule 22"), "[e]xcept by permission of the Court, principal briefs shall not exceed fifty pages . . . exclusive of pages containing the table of contents and the table of authorities." Kendall Williams failed to move for leave to file a brief in excess of the fifty page limit. The Court does not condone the submission of briefs, such as Kendall Williams' brief, exceeding the page limit imposed by Rule 22. On the other hand, the government has not objected to the length of Kendall Williams' brief. Nor has the government argued that it has been prejudiced in any way by Kendall Williams' lengthy brief. Accordingly, the Court will not dismiss the filing for failure to comply with Rule 22.

### B. Trial Judge's Conduct

Kendall Williams argues the Superior Court abused its discretion in denying his motion for a mistrial. He contends that a mistrial was warranted because the conduct of the trial judge deprived him of his due process right to a fair trial. Specifically, he claims that the judge revealed partiality toward the government by making prejudicial comments in the presence of the jury.

■■ "It is well-established that the conduct of a trial judge must be measured by a standard of fairness and impartiality."[5] *Greener v. Green,* 460 F.2d 1279, 1280 (3d Cir. 1972) (quotation omitted)). Yet, the line

---

[5] The right to be heard by a fair and impartial tribunal is a basic component of due process. *See Sill v. Penn. State Univ.,* 462 F.2d 463, 469 (3d Cir. 1972); *see also United States v. Cross,* 128 F.3d 145, 148 (3d Cir. 1997) ("The right to a fair and impartial trial for the resolution of guilt lies at the very heart of the constitutional guarantee of due process."). "[I]f someone is deprived of his right to an impartial tribunal, then he is denied his constitutional right to due process, regardless of the magnitude of the individual and state interest at stake, the risk of error and the likely value of additional safeguards." *United Retail & Wholesale Employees*

between permissible and impermissible conduct of a trial judge is not absolute. *See United States v. Wilensky,* 757 F.2d 594, 598 (3d Cir. 1985). The Court must balance the facts and circumstances of each case to determine whether the conduct of the trial judge was "so prejudicial as to deprive [the] defendant [] of a fair, as opposed to a perfect, trial." *United States v. Beaty,* 722 F.2d 1090, 1093 (3d Cir. 1983)).

■ In *United States v. Olgin,* 745 F.2d 263 (3d Cir. 1984), the United States Court of Appeals for the Third Circuit outlined a sliding scale approach to assess the propriety of a trial judge's comments before the jury. *See id.* at 268-69 (explaining that "[t]here is no bright line separating remarks that are appropriate from remarks that may unduly influence a jury"). This approach requires a balancing of the following four factors: (1) the materiality of the comment, (2) its emphatic or overbearing nature, (3) the efficacy of any curative instruction, and (4) the prejudicial effect of the comment in light of the jury instruction as a whole. *Id.*

■ First, the court considers the materiality of the challenged comment, placing more concern with "a comment on a matter central to the defense than with a comment on a tangential issue." *Id.* at 269. Second, "[t]he reviewing court must be concerned with 'emphatic or overbearing remarks' that a jury may accept as controlling." *Id.* (quoting *United States v. Gaines,* 450 F.2d 186, 189 (3d Cir. 1971), *cert. denied,* 405 U.S. 927, 92 S. Ct. 978, 30 L. Ed. 2d 801 (1972)). "However, a statement that questions the validity of an assertion, but does not flatly or emphatically dismiss the testimony, is of less concern." *Id.* Third, the efficacy of any curative instruction must be assessed by asking whether the judge clearly explained to the jury that it was free to disregard his remarks and was required to determine the facts and decide the case on its own. *See id.* (setting for the requirements for an effective curative instruction). "Both the number and clarity of such instructions are to be considered." *Id.* Fourth, "the reviewing court must examine the entire jury instruction to assess the true impact of the challenged remark." *Id.* (explaining that "[a] potentially prejudicial comment cannot be evaluated in isolation, out of context").

■ Finally, the court must balance the above-mentioned factors to determine whether the judge's comments warranted reversal:

*Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.,* 787 F.2d 128, 138 (3d Cir. 1985).

The stronger the potential prejudicial effect of a statement is, the stronger must be the mitigating factors. There may be cases in which the trial judge's comments are so out of bounds that no cautionary instruction to the jury could remove their prejudicial effect. . . . In cases in which the prejudicial effect of a judicial comment is not so egregious as to be uncorrectible, the appellate court must weigh the totality of the factors in determining whether the quantum of harm from a statement amounts to reversible error.

*Id.* at 269-70.

In this case, the trial judge's allegedly inappropriate comments occurred during the cross-examination of Raymond Smith. During that cross examination, Defense counsel asked Raymond Smith whether he had been smoking marijuana before the shooting. Raymond Smith replied in the affirmative. The prosecutor objected on grounds of relevancy. Defense counsel responded that Raymond Smith's testimony about whether he had been smoking marijuana was relevant to show his ability to perceive the shooting. The trial judge sustained the objection, stating, in the presence of the jury:

> THE COURT: You don't have any expert that's going to tell us whether or not if somebody has a diminution in their eyesight because of how much they smoked and how often . . . .

(Trial Tr. 98, Feb. 1, 2005.)

Defense counsel continued to question Raymond Smith about the effects of smoking marijuana on his state of mind. The prosecutor objected again. Immediately thereafter, the following exchange occurred:

> [DEFENSE ATTORNEY]: Your eyes get red when you're smoking weed?
> [RAYMOND SMITH]: Yes.
> Q: Does it affect your ability to move?
> A: No, sir.
> Q: Can you — do you drive a car?
> A: Yes, sir.
> Q: Can you drive a car the same when you're not on weed as when you're on weed?
> [PROSECUTOR]: Objection, Your Honor. They don't have an expert.

[DEFENSE ATTORNEY]: I'm trying to see how it affects him.

THE COURT: But get to the — get to the perception. Because I'll tell you something. There's a lot of people I does smell that they be smoking, smoking thing, as you pass the cars, and they're better drivers than a lot of these other people on the road that just can't drive.

So if we're going to get into his perception then ask him about his perception but remember now, you got to remember now, we're not going to have anybody coming here going tell us about the perception of how smoking weed is going to affect people. You know?

And we're not going to have a doctor. But let's deal as to him. And let's not get into driving because driving doesn't have anything to do with it.

[DEFENSE ATTORNEY]: I withdraw that.

THE COURT: All right. It has to do with, as you said, his perception. He said that, you know, it makes his eyes red. All right.

(*Id.* at 101-03.)

██ Kendall Williams claims that by commenting in front of the jury as to the effects of marijuana, and noting the lack of a defense expert on the subject, the trial judge precluded Kendall Williams from effectively challenging Raymond Smith's ability to perceive the events that occurred at the time of the crime.[6]

██ Raymond Smith's ability to perceive events around him at the time of the crime was arguably material to Kendall Williams' defense. However, the trial judge's comment about the effects of smoking marijuana on one's ability to drive was not material to the matter on trial.

---

[6] Kendall Williams also claims that the trial judge "destroyed" his cross-examination of Raymond Smith regarding his drug use at the time of the crime. That claim is not supported by the record. The trial transcript reflects that Kendall Williams had an adequate opportunity to cross-examine Raymond Smith regarding the effect of smoking marijuana on his ability to perceive the events around him. The trial judge merely restricted Kendall Williams from asking questions that would require medical opinion to properly answer. The Court finds no error in such limitation. *See, e.g., United States v. Ammar,* 714 F.2d 238, 250 (3d Cir. 1983) ("While [the defendant's] cross-examination of [the cooperating witness] was limited in some respects, there was ample cross-examination as to . . . [the witness'] use of drugs."); *see also United States v. Jimenez,* 513 F.3d 62, 76 (3d Cir. 2008) ("While the Confrontation Clause guarantees a criminal defendant the right to confront witnesses on cross-examination, a district court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination . . . .").

The comment about the absence of a defense expert on the effects of marijuana was also immaterial to Kendall Williams' case. Even assuming the comments did bear on issues material to the defense, they were not emphatic or overbearing. *Cf. United States v. Anton,* 597 F.2d 371, 372-73 (3d Cir. 1979) (reversing a conviction where the trial judge commented that he regarded the defendant "as devoid of credibility" and that he did "not believe [the defendant] absolutely and in all respects"); *Stevens v. United States,* 306 F.2d 834, 838 (5th Cir. 1962) (reversing a conviction where the trial judge said, "[a]ll right, I don't believe I want to hear any more testimony from this witness. I want to certify in the record that the Court wouldn't believe him on oath, and I don't want to waste the jury's time taking any more testimony from him").

Additionally, the trial judge issued a curative instruction on the same day he made the comments, stating:

> [A]nything that I have said in terms of marijuana, that is — I'm going to order that stricken from the record. What that means is that in your consideration of this case, you're not to consider anything whatsoever that I mentioned about marijuana. Only what the witnesses said from the witness stand.

(Trial Tr. 184, Feb. 1, 2005.)

That instruction unambiguously directed the jury to disregard the trial judge's comments about the effects of smoking marijuana. *See, e.g., Owens v. United States,* 483 F.3d 48, 68 (1st Cir. 2007) ("While we continue to think the . . . the judge's comments were ill-advised, the quantity of the evidence against Owens, the jury's discerning verdict, [and] the curative instructions . . . all militate against a finding of prejudice."); *Brown v. Gov't of the V.I.,* 40 V.I. 141, 146-47 (D.V.I. App. Div. 1998) ("Even if the trial judge's [comment] was in error, the harm caused was remedied by the curative instruction given to the jury and the substantial rights of the appellant accordingly were not affected."); *cf. Greener,* 460 F.2d at 1280-81 (remanding a case for a new trial where, *inter alia,* "the error [was not] cured by the judge's later *ambiguous* admonition to the jury" (emphasis added)).

 The Court must also evaluate the challenged comments in light of his jury instructions as a whole. The judge repeatedly made clear that the

jury was the sole determiner of credibility and fact.[7] In light of the entire charge, any prejudice caused by the judge's comments did not deprive Kendall Williams of a fair trial. Under these circumstances, the trial judge did not overstep the permissible bounds of comment. *See, e.g., Gaines,* 450 F.2d at 189 (holding that the trial judge, who continually instructed jury that they were the sole determiners of fact and credibility, had not overstepped the bounds of proper judicial comment by making statements about issues of fact in light of the complete jury charge); *United States v. Rickey,* 457 F.2d 1027, 1032 (3d Cir. 1972) ("It is well established that a federal judge is entitled to comment on the evidence and the credibility of the witnesses as long as he makes clear . . . that the jurors are the 'sole judges of the evidence' and of the credibility of the witnesses."); *see also United States v. Carlos,* 478 F.2d 377, 379 (9th Cir. 1973) ("Normally, if the appropriate cautionary instructions are given it is made clear to the jury that they are the final arbiters of the credibility of witnesses and there will be no reversible error.").

Kendall Williams further faults the trial judge for improperly interrogating a government witness. He claims that the judge's examination of the witness showed bias toward the government.

In assessing the propriety of a judge's interrogation of witnesses, courts should be mindful that the trial judge is "not merely a moderator,

---

[7] The trial judge instructed the jurors as follows:

As the trier of facts you are called upon to determine the believability and credibility of the witnesses and the weight to be given to each witness's testimony. It is you who will make the determination. To make this determination you should carefully scrutinize the testimony as given. Consider it in light of your experience and understanding, and observe intensely and with care the manner, the demeanor, the attitude of each witness as he or she testifies. . . . And in addition to that, the extent to which that witness's testimony is either supported or contradicted by any other evidence or testimony.

(Trial Tr. 21-22, Jan. 31, 2005.)

The trial judge further stated:

Now during the course of the trial, I will undoubtedly be called upon to make certain legal rulings. I instruct you, ladies and gentlemen of the jury, to bear in mind constantly that whatever that ruling may be, it deals strictly with a legal concern, and you may not, therefore, consider any legal ruling which I may make to indicate any opinion of any kind about any fact on the part of the Court. I am in no way indicating any leaning about any factual issue, nor am I suggesting anything regarding the credibility of any witness, or the weight to be given to that witness's testimony by any of my rulings.

(*Id.* at 22-23.)

but is the governor of the trial." *Beaty,* 722 F.2d at 1092 (quoting *Quercia v. United States,* 289 U.S. 466, 469, 53 S. Ct. 698, 698, 77 L. Ed. 1321 (1933)).

> We have long abandoned the adversary system of litigation which regards opposing lawyers as players and the judge as a mere umpire whose only duty is to determine whether infractions of the rules of the game have been committed. A trial is not a contest but a search for the truth so that justice may properly be administered. For the purpose of eliciting the germane facts, a judge may on his own initiative and within his sound discretion interrogate witnesses.

*Id.* (quoting *Riley v. Goodman,* 315 F.2d 232, 234 (3d Cir. 1963)). On the other hand, a trial judge must not "abandon his proper role and assume that of an advocate." *Id.* (quoting *United States v. Green,* 544 F.2d 138, 147 (3d Cir. 1976), *cert. denied,* 430 U.S. 910, 97 S. Ct. 1185, 51 L. Ed. 2d 588 (1977)). "The judge's participation must never reach the point where it appears clear to the jury that the court believes the accused is guilty." *United States v. Nobel,* 696 F.2d 231, 237 (3d Cir. 1982) (citation and quotations omitted)).

Immediately following the above exchange about the effects of marijuana, the trial judge directly questioned Raymond Smith:

> THE COURT: But let me ask you this, can you see when you smoke the weed?
> THE WITNESS: Yes, sir.
> THE COURT: Do you have to wear glasses when you smoke the weed?
> THE WITNESS: No, sir.

(Trial Tr. 103, Feb. 1, 2005.)

▆▆ Kendall Williams claims that the judge inappropriately assumed the role of advocate by questioning Raymond Smith during the trial about the effects of smoking marijuana on his perception. In Kendall Williams' view, the judge's questions suggested to the jury that the judge believed Raymond Smith's use of marijuana did not impair his identification of Kendall Williams. On the other hand, the questions may have been the judge's attempt to focus the prior testimony of Raymond Smith on the effects of marijuana by clarifying the specific visual effects. Even if the

questions supported the reasonable inference that the trial judge thought Raymond Smith's vision was unimpaired by smoking marijuana, they do not reveal the judge's belief as to the proper outcome of the trial. *Cf. Beaty*, 722 F.2d at 1094 (explaining that clarifying questions that do not go to ultimate issues of fact for the jury "are proper unless they convey[] to the jury the judge's belief on the proper outcome of the trial").

■ While we do not condone the trial judge's comments and questions about the effects of smoking marijuana, we recognize that "the right to a fair trial does not translate into the right to a perfect trial." *See United States v. Wilensky*, 757 F.2d 594, 599 (3d Cir. 1985) (citing *United States v. Robinson*, 635 F.2d 981 (2d Cir. 1980)); *see also United States v. Denardi*, 892 F.2d 269, 270 (3d Cir. 1989) ("Perfect equanimity on the part of a trial judge is not mandated by the Constitution."). On balance, the trial judge's conduct in this case, however ill-advised, do not warrant a reversal of Williams' conviction when taken in context and in light of the overall fairness of the trial. *See, e.g.*, *Saada*, 212 F.3d 210, 223 (3d Cir. 2000) (finding no reversible error where the trial judge "advis[ed] the jury of certain facts regarding [a witness's] misconduct 'because the fair and neutral approach of the District Court is evident from the overall record' "); *cf. Rush v. Smith*, 56 F.3d 918, 923 (8th Cir. 1995) (reversing and remanding a case to the district court where "the trial judge's comments [about racial solidarity] substantially affected [the plaintiff's] right to a fair trial").

The trial judge did not abuse its discretion in denying Kendall Williams' motion for a mistrial.

## B. The Prosecutor's Conduct

Kendall Williams argues that the conduct of the prosecutor infringed upon his due process right to a fair trial. Because the defense counsel failed to object to the alleged prosecutorial misconduct during trial, such misconduct is reviewed for plain error. *See United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005).

■ The Court applies a two-part test in assessing prosecutorial misconduct. First, we must determine whether the conduct in question was improper. If so, we must then ask whether, in the context of the trial as a whole, the misconduct created sufficient prejudice as to violate the defendant's due process rights. *See Marshall v. Hendricks*, 307 F.3d 36,

63-64 (3d Cir. 2002); *Turbe v. Gov't of the V.I.*, 49 V.I. 730, 737-38 (D.V.I. App. Div. 2008).

In determining whether prosecutorial misconduct resulted in sufficient prejudice to warrant reversal, we evaluate: (1) the scope of the comments within the context of the whole trial; (2) the effect of any curative instructions given; and (3) the weight of the evidence against the defendant. *See United States v. Gambone*, 314 F.3d 163, 179 (3d Cir. 2003); *see also United States v. Young*, 470 U.S. 1, 11, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."). We consider both the individual and combined effect of any challenged comments. *See id.*; *Gov't of the V.I. v. Joseph*, 770 F.2d 343, 350 (3d Cir. 1985)).

"[S]ome occurrences at trial may be too clearly prejudicial for . . . a curative instruction to mitigate their effect." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974). On the other hand, curative instructions, which the jury is presumed to follow, are generally sufficient to overcome improper statements. *See United States v. Hakim*, 344 F.3d 324, 329-31 (3d Cir. 2003). Indeed, if the record reveals that the jury would have convicted the defendant even if it had not been exposed to the challenged comments, then the Court must conclude that no actual prejudice accrued. *Plaskett v. Gov't of the V.I.*, 147 F. Supp. 2d 367, 376 (D.V.I. App. Div. 2001).

In this case, the allegedly inappropriate comments in this case occurred during the prosecutor's opening statement as well as his closing arguments.

### 1. Opening Statement

Kendall Williams contends that, during his opening statement, the prosecutor engaged in misconduct by making comments designed to inflame the passions of the jury and create bias against Kendall Williams. He also asserts that the prosecutor improperly made statements that were not supported by evidence at trial.

The purpose of an opening statement is to "give the broad outlines of the case to enable the jury to comprehend it. It is not to poison the

jury's mind against the defendant, and it is certainly not to recite items of highly questionable evidence." *United States v. DeRosa,* 548 F.2d 464, 470 (3d Cir. 1977); *United States v. Burns,* 298 F.3d 523 (6th Cir. 2002) (quotation omitted), *cert. denied,* 538 U.S. 953, 123 S. Ct. 1643, 155 L. Ed. 2d 500 (2003). A prosecutor should not make statements calculated to "inflame the passions or prejudices of the jury," or which "divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law." *United States v. Homer,* 545 F.2d 864, 866 n.6 (3d Cir. 1976) (quotation omitted). Additionally, "[w]here the prosecutor informs the jury that the government will produce certain evidence to show a defendant's guilt and then, without good cause, fails to do so, the prosecutor fails to give a proper opening statement to the jury." *United States v. Thomas,* 114 F.3d 228, 248, 324 U.S. App. D.C. 374 (D.C. Cir. 1997).

In his opening statement in this case, the prosecutor referred to Kendall Williams as a high school drop out and a cold-blooded killer. The prosecutor mentioned a playground with children playing outside, implying that they were present at the scene of the crime. He also suggested that the only employment Gregory Williams had was that of a hit man. The prosecutor further stated that the motive for the killing was to seek revenge for over half a million dollars worth of diamonds that was stolen from his house.

 However, there was no evidence adduced at trial showing that Kendall Williams hired a professional hit-man to kill Khoy Smith.[8] Nor was there any evidence that the shooting occurred near a playground, or that children were present outside in the vicinity and at the time of the shooting. The evidence at trial also revealed that the jewelry was worth $6,100, not $500,000 or $25,000,000, as the prosecutor told the jury. Thus, the prosecutor's references to Kendall Williams as having $500,000 or $25,000,000, hiring a professional hit-man, and disregarding nearby children, do not present an objective overview of the evidence. Rather, those statements create an overly dramatic and unfairly depiction of

---

[8] While there is evidence the Kendall Williams drove Gregory Williams to and from the scene of the shooting, there is no evidence that Gregory Williams was a professional hit-man, or that he was actually hired by Kendall Williams to perform the shooting.

Kendall Williams. Accordingly, those comments were improper.[9] *See, e.g., United States v. Irizarry,* 341 F.3d 273, 308 (3d Cir. 2003) (finding that the prosecutor's attempt to connect the defendant with a notorious organized crime boss was "as impertinent as it was improper and irrelevant"); *United States v. Newton,* 369 F.3d 659, 681-82 (2d Cir. 2004) (finding that the prosecutor's question to the jury asking whether they would trust the defendant with children was improper); *Thomas,* 114 F.3d at 247-49 (holding that certain claims made by the prosecutor during his opening statement were improper because they were unsupported by evidence at trial).

However, the government presented significant evidence against Kendall Williams during the trial. For instance, Raymond Smith, Sasso, and Petersen all identified Kendall Williams as the driver of the car that carried the shooter to and from Turnkey on October 27, 2002. Additionally, the trial judge instructed the jury that, "[t]he opening statement . . . is not evidence and may not be regarded as such." (Trial Tr. 12, Jan. 31, 2005.) The judge repeatedly reminded the jury that it was the sole trier of fact.

In the context of the entire trial, the Court finds that the prosecutor's inappropriate comments during his opening statement do not rise to the level of incurable prejudice. *See, e.g., Irizarry,* 341 F.3d at 308 (holding that the prosecutor's improper attempt associate the defendant with an organized crime boss was cured by the judge's cautionary instruction); *United States v. Lizardo,* 445 F.3d 73, 87 (1st Cir. 2006) (holding that the prosecutor's opening statement, which contained three comments that were unsupported by evidence at trial was improper, but not prejudicial); *United States v. Carter,* 410 F.3d 1017, 1026 (8th Cir. 2005) (finding that "the prosecutor's description of [the defendant] as a 'con man' and 'deviate [sic],' " was improper, and that "the use of the word 'deviate' is especially abusive," but concluding that reversal was inappropriate

---

[9] In light of the evidence adduced at trial implicating Kendall William in the murder of Khoy Smith, the Court does not find the prosecutor's reference to Kendall Williams as a "cold-blooded killer[ ]" to be misconduct. *See, e.g., United States v. Pungitore,* 910 F.2d 1084 (3d Cir. 1990) (holding that the prosecutor's reference to defendant as "cold-blooded murderer" was not misconduct because such reference was a fair comment on the evidence presented at trial). Similarly, the prosecutor's comments references to Kendall Williams as an "uneducated" "high school drop out[ ]" were not improper given Kendall Williams own testimony at trial that he had not graduated from highschool. *Id.*

because the government presented substantial evidence of the defendant's guilt); *Newton,* 369 F.3d at 681-82 (holding that, because the prosecutor's improper reference to trusting the defendant with children "was not serious, the district court acted reasonably in deciding not to highlight it with a special curative admonition, relying instead on its general instruction that the jury must base a verdict only on the evidence and that the attorneys' arguments were not evidence"); *cf. Copeland v. Washington,* 232 F.3d 969, 975 (8th Cir. 2000) (holding that the prosecutor's misconduct in "refer[ing] to facts not in evidence (the other murders in all of Missouri's history); dr[awing] a comparison to violent drug gangs, evoking the jury's fear of crime; and ma[king] references to his son and the defense attorney's son .... was the sort of argument that would result in 'mob justice' rather than result in a reasoned deliberation").

### 2. Closing Arguments

Kendall Williams further asserts that the prosecutor made several statements during closing arguments that effectively transformed the trial judge into a government witness in the presence of the jury. He also argues that some of the prosecutor's closing remarks were inflammatory.

██ "The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating and applying *the evidence." United States v. Pelullo,* 964 F.2d 193, 219 (3d Cir. 1992) (quoting *United States v. Morris,* 568 F.2d 396, 401 (5th Cir.1978) (emphasis in original)). The prosecutor, as the representative of the sovereignty whose interest in a criminal prosecution is that justice shall be done, should prosecute with vigor but must refrain from engaging in closing arguments calculated to bring about a conviction not based on the evidence. *See Berger v. United States,* 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935), *overruled on other grounds, Stirone v. United States,* 361 U.S. 212, 215, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). It is therefore improper for a prosecutor, during closing argument, to vouch for the credibility of government witnesses or express his personal opinion. *See Young,* 470 U.S. at 18-19 ("The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion . . . carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."). Similarly, the prosecutor may not contend before the jury that the trial judge believes that the defendant is guilty. *See*

*United States v. Harlow,* 444 F.3d 1255, 1267 (10th Cir. 2006); *United States v. Bennett,* 356 F.2d 500 (7th Cir. 1966).

 In evaluating the prejudicial effect of prosecutorial misconduct during summation, courts apply the "invited response" rule. *Young,* 470 U.S. at 11. *Fahy v. Horn,* 516 F.3d 169, 202-204 (3d Cir. 2008). Under that rule, the court considers whether the prosecutor's improper closing remark was made in response to any improper made by the defense attorney during trial or during the defendant's summation. *See id.* "[T]he fact that a prosecutor's comment was invited may have a mitigating effect on the impact that comment might otherwise have on the jury." *Fahy v. Horn,* 516 F.3d 169, 202-204 (3d Cir. 2008).

Here, the prosecutor told the jury, at the beginning of his closing argument:

> So all this is about is do you believe our witnesses, our eye witnesses who, the Judge will tell you, we had to force each witness here for our side. It's called a material witness order.
>
> We had to go to this Judge, and we had to make him say to come to this court. That's why you could see the fear and intimidation in each witness that we brought forward here.

(Trial Tr. 106-07, Feb. 4, 2005.)

The prosecutor then discussed the conflicting evidence presented at trial regarding whether Sasso had a deal with the government, the prosecutor stated:

> There was no deal. And who did he hear about that deal from? An inmate that they brought. . . . To talk about a deal, when you heard there was no deal? And who did you hear that deal from?
>
> Judge Swan said there was no deal. There is no deal. So you want to hear, believe an inmate or you want to believe Judge Swan? I'll take Judge Swan any day.

(*Id.* at 110.)

Finally, during rebuttal summation, the prosecutor commented about the effects of smoking marijuana:

> At first they started off, oh, it's weed. This case is about weed. The Judge said that's God's weed. There's no problem with that.

(*Id.* at 228.)

 Those arguments implied to the jury that the trial judge favored the government. The prosecutor implicitly vouched for the general credibility of the government's witnesses by first posing the question of who to believe and then, in the same sentence, stating that the judge had compelled the attendance of all of the government's witnesses at the trial. More blatant vouching occurred when the prosecutor portrayed the judge as a government witness and compared the judge's purported statement with the conflicting testimony of a defense witness, and personally endorsed the judge's alleged position on the matter. The prosecutor indirectly vouched for Raymond Smith by stating that the trial judge had no problem with marijuana smoking, implying that the judge believed Raymond Smith's testimony that smoking marijuana did not drastically impair his perception. Accordingly, those arguments were wholly inappropriate. *See, e.g., United States v. Harlow,* 444 F.3d 1255, 1267 (10th Cir. 2006) (finding that the prosecutor improperly vouched for government witnesses during his closing argument by implying that the trial judge approved of their credibility); *Marshall v. Hendricks,* 307 F.3d 36, 65 (3d Cir. 2002) (holding that the prosecutor's statement during closing argument that he believed a government witness was telling the truth constituted improper vouching); *see also Pelullo,* 964 F.2d at 219 ("The credibility of witnesses is an issue for the jury . . . .").

The record in this case does not reveal any comments by defense counsel that could reasonably be construed as inviting the prosecutor's improper closing remarks. Additionally, vouching for Sasso was significant. By placing the trial judge's imprimatur on the fact that Sasso had no deal with the government, the prosecutor arguably prevented important impeachment evidence from receiving the jury's serious consideration.[10] Kendall Williams' attorney briefly referenced Sasso's testimony that there was no deal during his own summation, but could not vehemently argue that point without appearing to the jury like he was calling the trial judge a liar. Sasso's credibility was arguably material to the trial, and the issue of whether he had a deal with the government was hotly contested. On the other hand, the implicit vouching for Raymond

---

[10] *See United States v. Bagley,* 473 U.S. 667, 105 S. Ct. 3375, 3384, 87 L. Ed. 2d 481 (1985) (recognizing the potential importance of deals between prosecution witnesses and the government as impeachment evidence).

Smith was far less significant in the context of the entire trial. Though the trial judge had not mentioned "God's weed," he had previously expressed his opinion to the jury that smoking marijuana had minimal effects, if any, on a person perception. Moreover, the judge twice specifically instructed the jury to disregard his opinions about marijuana.

The trial judge gave no curative instructions specifically related to the prosecutor's summation. However, the judge generally instructed the jury several times during the trial that it was the sole judge of credibility. Additionally, in his final charge, the judge told the jury:

> Statements by lawyers, whether on opening statement or closing argument, are not evidence and may not be regarded as such. . . .
>
> . . .
>
> Nothing I have said during the course of the trial was meant to influence your decision in any way.

(Trial Tr. 287, 296, Feb. 4, 2005.) The charge as a whole clearly conveyed to the jury that it was free to disregard the prosecutor's remarks.

Finally, the Court has already found that the weight of the evidence against Kendall Williams was strong. Even if the jury discredited the testimony of both Sasso and Raymond Smith, Petersen's testimony would still implicate Kendall Williams in the October 27, 2002, shooting.

The Court is deeply troubled by the prosecutor's inappropriate closing arguments. However, in the context of the entire trial, the Court is unpersuaded that such misconduct deprived Kendall Williams of his right to a fair and impartial tribunal.[11] *See, e.g., Marshall,* 307 F.3d at 65 (holding that, while the prosecutor improperly opined on a witness' credibility during closing argument, that he believed a government witness was telling the truth constituted improper vouching, the error did cause incurable prejudice); *Harlow,* 444 F.3d at 1267 (holding that any prejudice caused by the prosecutor's implying that the trial judge found

---

[11] Kendall Williams also claims that the prosecutor's comment during rebuttal summation that he delayed an entire year before filing a notice of alibi defense. However, the record reflects that Kendall Williams first filed such notice on July 29, 2004, and supplemented it twice thereafter. The Court finds this reference to be inaccurate and improper. Yet, in the context of the trial, its impact was minimal and did not infringe on Kendall Williams' right to a fair trial.

the government's witnesses to be credible did not require reversal because the judge gave a sufficient curative instruction).

## C. Evidentiary Rulings

Kendall Williams argues that the Superior Court erred in admitting into evidence the testimony of government witnesses who stated that they felt threatened by the defendants. He also contends that the court erred in allowing hearsay elicited from Detective Stout indicating that other witnesses had identified the defendants, but were afraid to testify at trial.

### 1. Testimony of Raymond Smith, Sasso, and Petersen

During direct examination, the prosecutor asked Raymond Smith about why he had moved from St. Thomas to Florida after the shooting. Raymond Smith testified that he left because he was "terrified for [his] life . . . ." (Trial Tr. 72-75, Feb. 1, 2005.) During the prosecutor's redirect examination of Sasso, Sasso stated that he was scared in prison. Sasso's testimony suggested that his fear stemmed from the fact that Gregory Williams had relatives who were corrections officers. During Petersen's testimony, she identified Kendall Williams but refused to identify Gregory Williams. The prosecutor moved to declare Petersen a hostile witness, and the court granted the motion. Thereafter, the prosecutor asked Petersen whether she was afraid to testify against the defendants at trial, and Petersen responded that she was. The prosecutor further inquired whether Petersen feared for the safety of her children', and she answered that she did.

██ ██ "It is well-established that evidence of threats or intimidation is admissible . . . to show a defendant's consciousness of guilt, as well as to impeach a witness whose testimony was influenced by such conduct . . . ." *United States v. Gatto,* 995 F.2d 449 (3d Cir. 1993); *see also United States v. Chauncey,* 420 F.3d 864 (8th Cir. 2005); *United States v. Marks,* 816 F.2d 1207, 1212 (7th Cir. 1987); *United States v. Gonsalves,* 668 F.2d 73, 75-76 (1st Cir.), *cert. denied,* 456 U.S. 909, 102 S. Ct. 1759, 72 L. Ed. 2d 168 (1982). The United States Court of Appeals for the Third Circuit has cautioned that,

> [a]lthough threats are thus of relevance to the proceeding, they constitute a striking example of evidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or

otherwise may cause a jury to base its decision on something other than the established propositions in the case.

*United States v. Guerrero*, 803 F.2d 783, 785 (3d Cir. 1986) (quotations omitted).

The above-quoted testimony regarding the eyewitnesses' fear or intimidation of testifying against the defendants was relevant to show the defendants' consciousness of guilt. *See, e.g., Gatto*, 995 F.2d at 455-56 (finding that government witness' testimony that he had been intimidated by the defendant in the past and received allegedly threatening looks during the trial from a courtroom spectator, who was purportedly associated with the defendant as well as from the defendant himself was relevant to prove consciousness of guilt); *Guerrero*, 803 F.2d at 785 (finding evidence that while incarcerated, the defendant threatened an alleged coconspirator not to testify against him was relevant to show consciousness of guilt). Kendall Williams argues, however, that the evidence should have been excluded as overly prejudicial.

In considering whether the threat or intimidation evidence is unfairly prejudicial, the Court weighs "the need for the evidence," including "the importance and centrality to the ultimate issue in the case of the fact sought to be proved by the threat evidence, and the availability of other evidence to establish the fact sought to be proven by use of the threat evidence" against the following factors: (1) "the tendency of the particular conduct alleged to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"; (2) "the nature or style of the specific witness's narrative"; (3) "the likelihood that the testimony is true"; and (4) "the sufficiency of the other evidence presented to make a reasonable connection between the defendant and the offense charged." *Guerrero*, 803 F.2d at 786 (internal citations and quotations omitted).

Here, the testimony concerning Sasso and Petersen was "needed" by the prosecution in order to explain the failure of those witnesses to voluntarily report the murder, as well as to reconcile Sasso's prior inconsistent statements denying altogether that he was at Turnkey at the time of the murder with his trial testimony that he was an eyewitness. Petersen's testimony was significant to explain her hostility toward the government, and to reconcile her refusal to specifically identify Gregory Williams as the shooter, despite her statement that the shooter was in the

1081

courtroom. The theme of witness fear or intimidation was oft-repeated during the trial. However, the specific testimony was not so provocative that it would suggest an improper basis to conclude that the defendants' in fact murdered Khoy Smith. Moreover, there is sufficient indicia of the truthfulness of such testimony. Indeed, the witness' fear of testifying against the defendants was corroborated by Detective Stout's testimony that these witnesses failed. It was also consistent with the Raymond Smith's. Finally, in light of the other evidence presented at trial, the threat or intimidation testimony was not crucial to connecting either defendant with the crime charged.

Accordingly, the Superior Court did not err in admitting such testimony. *See, e.g., Guerrero,* 803 F.2d at 786-87 (holding that threat evidence was not overly prejudicial or confusing, as the threat was corroborated by the refusal of another coconspirator to testify despite a previous agreement to do so, and by the fact that the other coconspirator's daughter altered her story so as not to implicate the defendant); *United States v. Gonsalves,* 668 F.2d 73, 75-76 (1st Cir.), *cert. denied,* 456 U.S. 909, 102 S. Ct. 1759, 72 L. Ed. 2d 168 (1982) (holding that, despite the fact that the threat was made to an FBI agent rather than a witness, "we cannot say these circumstances eliminated the inference that the statement sprang from a consciousness of guilt. Its ultimate probative weight was something the court could reasonably think best left to the jury").

### 2. Detective Stout's Testimony

On direct examination, Detective Stout testified that, at the outset of the investigation of this matter Raymond Smith was reluctant to speak to the police. Detective Stout stated:

> After we made contact with him, he let us to know, he just witnessed something. He witnessed a murder and he was scared. And he was in fear for his life. That's what Raymond Smith indicated to me.

(Trial Tr. 69, Feb. 2, 2005.) Detective Stout further testified that several members of the Tutu High Rise housing community were reluctant to speak with the police. During his redirect examination, Detective Stout stated:

> THE WITNESS: [W]hen I made contact with Makeda Petersen I took a statement from her. Makeda Petersen indicated to me that she was in fear for her life.

. . .

She indicated to the police that she was afraid because she had some information about the case, the killing of Khoy Smith.

. . .

She decided she needed to move someplace . . . where she won't be so scared of these individuals.

(*Id.* at 162-164.) Detective Stout additionally testified that, out of concern for Petersen's safety, the government gave her $600 to relocate.

Kendall Williams contends that Detective Stout's testimony regarding the fear or intimidation experienced by Raymond Smith and Petersen was inadmissible hearsay.

Hearsay is defined as "a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated . . . ." 5 V.I.C. § 932. Hearsay is not admissible unless an exception applies. *Id.* Thus, generally a witness cannot testify as to what she told someone outside of court, unless a hearsay exception applies. However, title 5, section 932(1) of the Virgin Islands Code ("Section 932(1)") provides an exception to the hearsay exclusion rule. Under Section 932, "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness . . . ." 5 V.I.C. § 932(1).

 To the extent that Detective Stout's testified regarding any out-of-court statements made by Raymond Smith, or Petersen, and offered for the truth of the matter asserted, a hearsay exception applied.

Raymond Smith, and Petersen, were both present at the trial and available for cross-examination with respect to the statements they made to Detective Stout well as the general subject matter of such statements. Raymond Smith and Petersen did in fact testify regarding the subject matter of the alleged hearsay statements they made to the Detective Stout. That is, both witnesses testified regarding their fear or intimidation of the defendants and their reluctance to testify against the defendants at trial. Accordingly, the trial court did not err in admitting the above testimony. *See* 5 V.I.C. § 932.

Even if Detective Stout's testimony regarding the prior statements made by Raymond Smith and Petersen was inadmissible, it was not prejudicial because it was cumulative. *See Joseph v. Gov't of the V.I.*, 46 V.I. 612 (D.V.I. App. Div. 2005) (holding improper admission of hearsay evidence harmless when cumulative) *rev'd on other grounds*, 162 Fed. Appx. 175 (3d Cir. 2006). As set forth above, Raymond Smith and Petersen both testified at trial that they feared the defendants. Therefore, even if Detective Stout's testimony regarding the statements of those eye witnesses was inadmissible hearsay, it would have been cumulative and thus harmless.

 In contrast, the unnamed "other individuals" referenced in Detective Stout's testimony were not present at trial or subject to cross-examination. Over Kendall Williams' hearsay objection, the Superior Court admitted the testimony, explaining:

> THE COURT: No, that is not hearsay. They just indicated they don't want to come forward.
>
> . . .
>
> THE COURT: He didn't say the exact words of what he told him on that. All right?

(Trial Tr. 72-73, Feb. 2, 2005.) However, there is no requirement that hearsay must be verbatim. Rather, Virgin Islands law defines the term "statement" as including "not only an oral or written expression but also non-verbal conduct of a person intended by him as a substitute for words in expressing the matter stated." 5 V.I.C. § 931(1). Contrary to the trial judge's understanding, Detective Stout's testimony that "other individuals" indicated to him that they feared for their lives or had no desire to get involved was inadmissible hearsay.[12] Accordingly, the Superior Court erred in admitting such testimony.

 However, in light of the evidence presented against Kendall Williams at trial, the Court finds that there is a high probability that the admission of Detective Stout's hearsay statements did not impact the outcome of the trial. The evidentiary error was therefore harmless. *See*

---

[12] The government has not argued that such testimony was offered for anything other than the truth of the matter asserted.

*Texaco Antilles Ltd. v. Creque,* 273 F. Supp. 2d 660, 665 (D.V.I. App. Div. 2003) (quotations omitted) (alteration in original) ("[A] non-constitutional harmless error requires a high[] probability that the evidence did not contribute to the . . . judgment . . . .").

### 3. Emmanuel's Testimony

 Kendall Williams contends that the trial judge committed reversible error in sustaining the prosecutor's objection to the defense attorney's question to Emmanuel, asking "[w]as there any relationship between [Kendall Williams'] house being broken into and Khoy Smith?" (Trial Tr. 231, Feb. 3, 2005.) The trial judge sustained the objection on grounds that Emmanuel lacked the personal knowledge of required to answer the defense attorney's question.

We agree, and find no error in the Superior Court's ruling. *See* 5 V.I.C. § 833 ("As a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence that he has personal knowledge thereof, or experience, training or education if such be required. Such evidence may be by the testimony of the witness himself. . . .").

### D. Sufficiency of the Evidence

Kendall Williams asserts that his convictions on all counts of the Information should be reversed because the government failed to produce sufficient evidence at trial to sustain a convictions against him for first-degree murder, first-degree assault, unauthorized carrying of a firearm during the commission of first-degree assault, and unauthorized possession of ammunition.

In evaluating the sufficiency of the evidence, the Court is "required to determine whether the evidence and all reasonable inferences which may be drawn therefrom, viewed in the light most favorable to the government as verdict winner, would permit a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt of every element of the offense." *Castillo,* 48 V.I. at 523; *see also United States v. Wolf,* 245 F.3d 257, 261 (3d Cir. 2001) (holding that a conviction may be sustained "if any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence"). The inquiry requires an "examin[ation] the totality of the evidence, both direct and circumstantial." *United States v. Gambone,* 314 F.3d 163, 170 (3d Cir. 2003). "[A] claim of insufficiency of the evidence places a very heavy

burden on an appellant." *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d Cir. 1990) (citation and quotations omitted)); *see also Abiff v. Gov't of the V.I.,* 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004) ("[T]his Court may overturn the appellant's conviction only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt. (citations and quotations omitted)).

What Kendall Williams characterizes as an argument about sufficiency of the evidence is more accurately an argument about the credibility of Raymond Smith, Sasso, and Petersen as witnesses. There is no doubt that, taking the testimony of Raymond Smith, Sasso, and Petersen as true, as the Court must, Kendall Williams aided and abetted Gregory Williams in possessing a firearm and shooting Khoy Smith.[13] He argues, however, that such testimony is insufficient to establish his guilt because Smith, Jr. and Sasso were unbelievable. The Court disagrees.

Issues surrounding the credibility of witnesses or the weight to be afforded evidence at trial are matters left to the factfinder. *See, e.g., Petillo v. New Jersey,* 562 F.2d 903, 907 (3d Cir. 1977). This Court affords great deference to such determinations by the factfinder, who is uniquely positioned to view a witness' demeanor and to assess credibility. *See id.; see also Georges v. Gov't of the V.I.,* 119 F. Supp. 2d 514, 523 (D.V.I. App. Div. 2000); *United States v. Delerme,* 8 V.I. 515, 457 F.2d 156, 160 (3d Cir. 1972). Such credibility determinations "should not be disturbed unless they are inherently incredible." *Petillo,* 562 F.2d at 907 (citations omitted).

Testimony is deemed inherently incredible or improbable where it is "either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." 29A AM. JUR. Evidence § 1447 (2003); *see also Edwards v. Gov't of the V.I.,* Crim. App. No. 2002-078, 2004 U.S. Dist. LEXIS 25110, at *11 (D.V.I. App. Div.

---

[13] Other than credibility, the only argument Kendall Williams makes to support his position that there was insufficient evidence to sustain his convictions is that the government failed to prove that he possessed *mens rea* required for first degree murder. *See* 14 V.I.C. §§ 921, 922. However, based on the evidence adduced at trial, including the testimony of Raymond Smith, Sasso, and Petersen, a rational jury could find beyond a reasonable doubt that Kendall Williams possessed the same malice aforethought and deliberate premeditation to commit murder as Gregory Williams possessed.

Nov. 30, 2004) ("The mere fact that testimony given by a witness in support of an issue is not plausible does not destroy its probative force. Where, however, the testimony of a witness is incredible, inherently or physically impossible and unbelievable, inherently improbable and irreconcilable with, or contrary to physical facts and common observation and experience, where it is so opposed to all reasonable probabilities as to be manifestly false, or is contrary to the laws of nature or to well-known scientific principles . . . , it is to be disregarded as being without evidentiary value even though uncontradicted.").

 In this appeal, Kendall Williams does not explicitly argue, nor does the record reflect, that either Raymond Smith's, Sasso's, or Petersen's testimony was so "manifestly false" that no reasonable person could take it as true. The thrust of his argument is merely that the three eye-witnesses who identified him as the culprit were not credible. That argument is unavailing.

 This Court has noted in the past that it "is bound by the jury's determination of witness credibility, even where the testimony may be contradictory." *See Gov't of the V.I. v. Peters,* 121 F. Supp. 2d 825, 830 (D.V.I. App. Div. 1998); *see also United States v. Holland,* 76 Fed. Appx. 452, 454 (3d Cir. 2003) "[W]e do not make an independent determination of the witnesses' credibility."); *United States v. Gross,* 511 F.2d 910, 920 n.15 (3d Cir. 1975) ("Appellant's numerous contentions challenging the sufficiency of the evidence relate merely to the credibility of [witnesses], which we cannot evaluate for ourselves on appeal."); *United States v. Brawer,* 205 F.2d 153, 153 (3d Cir. 1953) ("Since all defendants took the stand, the credibility of each was fully explored by lengthy cross-examination both as to prior inconsistent statements and as to past criminal records. The question of who was telling the truth in what part of his story was submitted to the jury under proper instructions as it should have been.").

Where, as here, the jury has returned a verdict of guilty, the Court "is bound to accept the evidence in the light most favorable to the prosecution." *Gross,* 511 F.2d at 920 n.15; *see also United States v. De Cavalcante,* 440 F.2d 1264, 1273 (3d Cir. 1971). Kendall Williams has thus failed to meet his burden of proving that the evidence adduced at trial was insufficient to sustain his conviction. *See, e.g., United States v. Jackman,* 72 Fed. Appx. 862, 865 (3d Cir. 2003) (noting that the "evidence, especially when considered in light of the substantial

discretion afforded to the juries who actually see and hear the testimony of the parties and witnesses and can thereby more properly judge their credibility, is sufficient to support [the] conviction"); *United States v. Trice,* Crim. No. 95-124-8, 1996 U.S. Dist. LEXIS 15154, at *8 (E.D. Pa. Oct. 11, 1996) ("[The defendant's] only defense was to attack the credibility of these witnesses. The determination of the credibility of witnesses is the sole province of the jury, and they were free to believe the testimony of these three witnesses. There was, therefore, sufficient evidence to support the conviction . . . .") (internal citations omitted).

█ Having carefully reviewed the record of this case, the Court finds that Kendall Williams is not entitled to a judgment of acquittal or, in the alternative, a new trial based on his argument that the witness testimony at trial was not credible.

### E. Ineffective Assistance of Counsel

█ Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel. Generally, ineffective assistance of counsel claims are limited to collateral review. *United States v. Gambino,* 788 F.2d 938, 950 (3d Cir. 1986). We will consider ineffective assistance of counsel claims on direct appeal only if the trial record clearly reflects the grounds therefor. *Id.* Only where the record is sufficient to establish ineffective assistance of counsel without an evidentiary hearing may we decide such claims. *United States v. McLaughlin,* 386 F.3d 547, 556 (3d Cir. 2004).

██ Kendall Williams argues that his trial counsel was ineffective for failing to object to the improper comments in the prosecutor's opening statement and closing arguments. However, Kendall Williams' claims are not cognizable on direct appeal, as the record precludes a comprehensive inquiry into the strategy and tactics behind counsels' decisions not to interpose such objections. *See id.* ("Where a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements of strategy or tactics that may have entered into defense counsel's challenged decision.").

### IV. CONCLUSION

Based on the foregoing, the Court will affirm Kendall Williams' conviction. Kendall Williams' claim of ineffective assistance of counsel will be dismissed without prejudice. An appropriate Order follows.